IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: ) | |
| ) | |
| Andy Baron Elliott ) | Case No. 21-30420 |
| ) | (Chapter 7) |
| and ) | |
| ) | |
| Sandra Leah Elliott, ) | |
| ) | |
| Debtors. ) | |
| _____) | |
| ) | |
| Gene W. Doeling, in his Official Capacity ) | |
| as Chapter 7 Trustee, ) | |
| ) | Adv. Case No. 24-07012 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Andy Baron Elliott ) | |
| ) | |
| and ) | |
| ) | |
| Sandra Leah Elliott, ) | |
| ) | |
| Defendants. ) | |

**<u>MOTION TO DISMISS</u>**

Come now Andy Baron Elliott ("Mr. Elliott") and Sandra Leah Elliott ("Ms. Elliott") (collectively, the "Elliots" or "Debtors," and each an "Elliott" or "Debtor"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b)(6), and move to dismiss the Adversary Complaint (the "Complaint," as found at DE #1) filed by Gene W. Doeling in his official capacity as Chapter 7 trustee of the Debtors' bankruptcy estate ("Mr. Doeling" or the "Trustee"), and in support thereof state as follows:

1

I.     **Introduction**

More than two years into a Chapter 13 case, the Elliotts found themselves eligible for Chapter 7 relief and elected to avail themselves of the temporal bargain expressly provided for by Congress: the Debtors could exit the rigors of their confirmed plan without ceding their post-petition assets and income to a liquidating estate. The Trustee seeks to deprive the Elliotts of this statutory perk, asserting the conversion to be a byproduct of bad faith and further urging the Debtors ought not receive the discharge central to a "fresh start." Yet the Complaint comes short of positing allegations sufficient to give rise to these extraordinary remedies, instead painting a picture of two unremarkably fallible individuals who endeavored to enjoy periodic recreation and to take care of their children whilst otherwise tending to the abiding rigors of life in Chapter 13.

Though stated through two counts, the Complaint pragmatically presents five causes of action: (i) declaratory relief to establish the bad faith requisite to bring post-petition assets into the Debtors' Chapter 7 estate; (ii) denial of discharge under Section 727(a)(2) of Title 11 of the United States Code (the "Bankruptcy Code"); (iii) denial of discharge under Section 727(a)(3) of the Bankruptcy Code; (iv) denial of discharge under Section 727(a)(4) of the Bankruptcy Code; and (v) denial of discharge under Section 727(a)(6) of the Bankruptcy Code. Five elementally-distinct causes of action present an enormous swath of territory to be covered, and it thusly comes as little surprise that the Complaint does not adequately do so in a scant 28 paragraphs.

The Complaint simply does not satisfy the pleading standards promulgated by the Federal Rules of Civil Procedure and Supreme Court precedent, especially insofar as the two claims sounding in fraud are concerned. Yet, more often than not, this failure appears to not merely be a matter of form but, too, one of substance; case law makes clear that debtors are very much entitled to exploit the Bankruptcy Code's allowance of conversion from Chapter 13 to Chapter 7, even if

2

such will result in notable post-petition monies being held at bay from creditors, so long as such was not the stuff of a grand scheme orchestrated prior to a petition's initial filing. Precedent similarly instructs that a denial of discharge is a harsh and extraordinary remedy, not to be doled out in the wake of mere oversight or even upon recognition that many debtors' lives are not neatly summarized in the rigid contours of Mad Lib-esque bankruptcy schedules rich in ornate legalese. And governing law does, too, hold that ordinary individuals are not to be held to the same record keeping rigors as publicly traded companies, especially in an era where store clerks are well trained to inquire if customers even desire a receipt in the first place.

Undersigned counsel does not represent the Debtors in their main case, though a review of the docket therein suggests multiple other contested matters to be afoot—including a challenge to certain exemptions. Nothing herein is intended to suggest bankruptcy ought to be a "free pass" or a simplistic avenue for persons with complex financial affairs. But findings of bad faith, and denials of discharges, are assuredly amongst the harshest remedies of the Bankruptcy Code, properly reserved for situations far more extraordinary than those alleged in the Complaint. And it is accordingly respectfully urged this adversary proceeding be dismissed.

## II.    Standard

Familiarly, Federal Rule of Civil Procedure 12(b)(6)—made applicable by Federal Rule of Bankruptcy Procedure 7012—permits the defense of "failure to state a claim upon which relief can be granted" to be asserted through a preliminary motion. Fed. R. Civ. P. 12(b)(6). In assessing one such motion, "the Court assumes all facts alleged in the complaint are true and makes reasonable inferences in favor of the nonmoving party." *Finstad v. Gord (In re Finstad)*, Nos. 05-31470, 18-07060, 2019 Bankr. LEXIS 4017, at *7 (Bankr. D.N.D. Oct. 21, 2019) (citing *Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018)).

3

However, while the allegations of a pleading are presumed true for purposes of a Rule 12(b)(6) motion, "[t]he complaint 'must show the plaintiff is entitled to relief, by alleging sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Du Bois v. Bd. of Regents of the Univ. of Minn.*, 987 F.3d 1199, 1202 (8th Cir. 2021) (quoting *BNSF Ry. Co. v. Seats, Inc.*, 900 F.3d 545, 546 (8th Cir. 2018)). And, in turn, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Du Bois*, 987 F.3d at 1202 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

As observed by the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). *See also Nat'l Union Fire Ins. Co. of Pittsburgh v. Cargill, Inc.*, 61 F.4th 615, 620 (8th Cir. 2023) ("Threadbare recitals . . . supported by mere conclusory statements are not sufficient to survive a motion to dismiss.") (quoting *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018)).

### III.    Factual Allegations

Accepting the allegations of the Complaint as true for the sole and limited purpose of this motion, *Du Bois*, 987 F.3d at 1202, the following assertions are pertinently levied by the Trustee:

1.    The Debtors previously filed a petition for Chapter 13 relief in 2021, thereafter converting their case to one under Chapter 7 on January 9, 2024. Complaint, DE #1, at ¶ 2.

2.    Prior to conversion, an amended Chapter 13 plan was proposed—and confirmed—in November 2023. *Id.* at ¶ 12.

4

3.  The Debtors own a home in Watford City that was burdened by an ordinary mortgage at the time of their Chapter 13 case's commencement and, against which, they took out a second loan subsequent to the Chapter 7 conversion. *Id.* at ¶¶ 4-6.

4.  The Debtors spent between $50,000.00 and $60,000.00 acquiring tools that may—or may not—have depreciated since acquisition (as used tools would seem wont to do). *Id*. at ¶¶ 7, 9.

5.  Mr. Elliott has not turned over his 2023 tax returns but such may be because he asserts that he is yet to file his 2023 tax returns. *Id*. at ¶ 8.

6.  The Debtors expended relatively-modest sums of money at sporting good stores while their case was pending in Chapter 13. *Id.* at ¶ 10.

7.  The Debtors also purchased RV accessories while in Chapter 13, though they claim to not own an RV and the Trustee appears to be careful in never actually alleging the Debtors own an RV. *Id.* at ¶ 11, *passim*.

8.  The Debtors made ordinary gifts to their children. *Id*. at ¶ 13.

9.  "The Debtor" purchased a trailer for $6,300 in November 2023, and "did not disclose that purchase," *id.* at ¶ 14, though it is unclear which of Mr. Elliott or Ms. Elliott is being referenced and, equally, it is unclear to whom said purchase was not disclosed.

10. The Debtors have a bank account into which money has been deposited and withdrawn, though they have not explained what came of $2,000 in cash withdrawn from the account nearly a year ago. *Id.* at ¶¶ 15-17.

11. While in Chapter 13, the Debtors made $11,029 in plan payments. *Id.* at ¶ 18.

5

12. Mr. Elliott has not produced all documents enumerated in a turnover order, *id*. at ¶ 19, though the Trustee notably does not allege all such documents to be extant in nature or to be in Mr. Elliott's possession, custody and control, *id*., *passim*.

**IV. Argument: The Bad Faith Claim Merits Dismissal**

It is altogether unsurprising that the Elliotts both made money, and made payments on their mortgage, while in Chapter 13. Yet, per Congress' explicit design, the Trustee is without access to those earned funds—or that gained homestead equity—unless the Debtors' path from Chapter 13 to Chapter 7 is one paved in bad faith. The allegations of the Complaint, even accepted as true, do not suffice in establishing such an illicit trail, instead pointing to relatively mundane occurrences chiefly consistent with broader notions of Chapter 13 debtors not being generally enjoined from living their lives whilst tending to the payment obligations of their confirmed plans.

The Bankruptcy Code expressly provides—with one very relevant exception—that "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion." 11 U.S.C. § 348(f)(1)(A).

The exception arises where a Chapter 13 proceeding is converted "in bad faith," in which case "the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion." 11 U.S.C. § 348(f)(2). *See, e.g.*, *Goetz v. Weber (In re Goetz)*, 651 B.R. 292, 296 (B.A.P. 8th Cir. 2023) ("If a debtor converts a case under Chapter 13 to a case under another chapter, the property the debtor acquired between the petition date and the conversion date is not property of the converted case, unless the debtor sought to convert the case in bad faith.") (citing 11 U.S.C. § 348(f)(2)); *Harris v. Viegelahn*, 575 U.S. 510, 517 (2015) ("Absent a bad-faith

6

conversion, §348(f) limits a converted Chapter 7 estate to property belonging to the debtor 'as of the date' the original Chapter 13 petition was filed.").

The question, accordingly, becomes one of what properly constitutes "bad faith." The Supreme Court has non-exhaustively pointed to "unfair manipulation of the bankruptcy system" as being symptomatic of "bad faith." *Harris*, 575 U.S. at 518 (quoting *In re Siegfried*, 219 B.R. 581, 586 (Bankr. D. Colo. 1998)).

There exists a general consensus that ". . . simply taking advantage of the statute's provisions excluding property acquired during the chapter 13 case from the chapter 7 estate after conversion is not bad faith." 3 Collier on Bankruptcy P 348.07. *See also In re Bejarano*, 302 B.R. 559, 563 (Bankr. N.D. Ohio 2003) ("As stated by the court in *In re Siegfried*, 'bad faith' requires a determination that 'there has been an unfair manipulation of the bankruptcy system to the substantial detriment or disadvantage of creditors.'") (quoting *Siegfried*, 219 B.R. at 585); *In re Wiczek-Spaulding*, 223 B.R. 538, 540 (Bankr. D. Minn. 1998) (". . . simply taking advantage of what the statute provides does not by itself amount to bad faith.").

Another Eighth Circuit bankruptcy court has explained, *inter alia*, "[b]ad faith requires some sort of under-handed conduct or intent by the debtor in seeking and obtaining a conversion. '[S]imply taking advantage of what the [conversion] statute provides does not by itself amount to bad faith.'" *SL Corp. v. Malone (In re Malone)*, Nos. BK07-40964-TJM, A10-4088-TJM, 2011 Bankr. LEXIS 1460, at *9 (Bankr. D. Neb. Apr. 21, 2011) (quoting *Wiczek-Spaulding*, 223 B.R. at 540).[1]

---

[1] This quotation has been cleaned up to remove an extra period that appears to be a typographical error by the *Malone* Court, but is otherwise unaltered.

7

Indeed, as noted by one sister court from another judicial circuit, in declining to find "bad faith" in the prism of a case where a debtor deliberately converted a Chapter 13 case to Chapter 7, so as to avoid having a post-petition inheritance become an asset of her estate:

> . . . a finding of bad faith should be limited to a situation in which a debtor has deliberately abused the bankruptcy process, e.g., by filing initially under Chapter 13 with the intention to thereafter convert to Chapter 7 in order to shelter an asset that the debtor expects to acquire shortly after filing for bankruptcy.

*In re Stillwaggon*, No. 9:10-bk-12289-FMD, 2014 Bankr. LEXIS 1085, at *8-9 (Bankr. M.D. Fla. Mar. 19, 2014). *See also In re Yormak*, No. 2:15-bk-04241-FMD, 2021 Bankr. LEXIS 2539, at *14 (Bankr. M.D. Fla. Sep. 16, 2021) ("For the Trustee to prevail on the Bad Faith Motion, the Trustee would need to establish, and the Court would need to find, that Debtor filed his Chapter 13 case to obtain the protection of the Bankruptcy Court (principally, the automatic stay under § 362) with the intent to later convert the case to a Chapter 7, in order to somehow exclude the Qui Tam Fees and the Class Action Fees from being property of the estate."); *In re Lien*, 527 B.R. 1, 8 (Bankr. D. Minn. 2015) (noting that a finding of bad faith ". . . requires a determination that the Debtors unfairly manipulated the bankruptcy process to the disadvantage of creditors.") (quoting *In re Perez*, 345 B.R. 137, 141 (Bankr. D. Del. 2006)).[2]

The Complaint in this case does not set forth assertions that amount to an unfair manipulation of the bankruptcy process. Rather, the allegations show the Debtors were in Chapter 13 for more than two years before converting their case to Chapter 13. Complaint, DE #1, at ¶ 2. No missed plan payment is alleged. *Id.*, *passim*. No misrepresentations of income to the Chapter

---

[2] It is not lost on the Debtors that Mr. Doeling was the trustee in the *Lien* case (which appears to be an outlying case), and that he prevailed under the *sui generis* factual construct of that matter, where the debtors received a large inheritance, concealed that inheritance and tax returns from the Chapter 13 trustee in direct violation of a confirmed Chapter 13 plan, concealed a car, concealed income, seemingly lied to the court about being cognizant of the provisions of their Chapter 13 plan, and were found to have not testified credibly on other fronts. *In re Lien*, 527 B.R. at 2-6.

8

13 trustee is alleged. *Id.*, *passim*. And no grand scheme to seek Chapter 13 relief, lock in an advantageous filing date, and then subsequently convert to Chapter 7 after post-petition assets were surreptitiously acquired, is alleged. *Id.*, *passim*.

Collier's topical notation—that it is permissible to "simply tak[e] advantage of the statute's provisions excluding property acquired during the chapter 13 case from the chapter 7 estate. . .," 3 Collier on Bankruptcy P 348.07—is notably relevant here. The financial transactions involving sporting goods and an elusive RV all occurred nearly two-years post-petition, in 2023. Complaint, DE #1, at ¶¶ 10-11. So, too, was a modest trailer purchased years after the Chapter 13 case was originally filed. *Id.* at ¶ 14. And the same goes for the timing of the monetary transactions highlighted by the Trustee, *id.* at ¶¶ 15-17, and the relatively unextraordinary gifts to the Debtors' children, *id.* at ¶ 13.

The Trustee does not suggest the Elliotts are ineligible to be Chapter 7 debtors, nor does he posit that their case, if not preceded by a stay in Chapter 13, would constitute an abusive Chapter 7 filing under Section 707(b). Rather, the Trustee makes allegations that, taken as a whole, demonstrate little more than that a couple managed to continue spending money in an ordinary, family-centric fashion while abiding by the rigors of their Chapter 13 plan and then came to realize they would be better served in Chapter 7 when one of the Debtors became separated from employment. Even if true, such would not nearly rise to the extraordinary level of "bad faith" requisite to make a showing under Section 348(f)(2). And, absent something more, it is thusly appropriate to dismiss Count I of the Complaint.

**V.      Argument: The Claim for Denial of Discharge Should be Dismissed**

The second count of the Complaint seeks a denial of the Debtors' discharge under Section 727(a)(2-4, 6) of the Bankruptcy Code. Yet the allegations attendant to this cause of action are

9

largely the variety of threadbare recitations forbade by *Iqbal* and *Twombly*, while the claim also comes notably shy of the heightened pleading standard of Rule 9 that is applicable to at least two of the sub-sections upon which this cause of action is based. More substantively, the mischief assumed by the Trustee in these claims is often insufficient—even if ultimately proven true—to give rise to the extraordinary remedy of denying the Elliotts a discharge, with allegations very often suggesting little more than the varieties of innocent record keeping imperfection that so often lead individuals to become debtors in the first instance.

As this Honorable Court has recently held, "[d]enying a debtor a discharge is a harsh remedy. Therefore, courts construe section 727 strictly in favor of the debtor." *Glob. Fin. & Leasing Servs., LLC v. Tello (In re Tello)*, 640 B.R. 181, 199 (Bankr. D.N.D. 2022) (citing *Home Serv. Oil Co. v. Cecil (In re Cecil)*, 542 B.R. 447, 451 (B.A.P. 8th Cir. 2015)). As noted by the United States Bankruptcy Court for the Western District of Tennessee:

> Indeed, the denial of a general discharge can work a serious deprivation upon a debtor, and there are many circumstances where a debtor's acts and omissions may have been inadvertent or otherwise excusable. Thus, the provisions of § 727(a) are to be construed liberally in favor of granting debtors the fresh financial start contemplated by the Bankruptcy Code and the Supreme Court, and construed strictly against parties seeking to deny the granting of a debtor's discharge.

*Clippard v. Jarrett (In re Jarrett)*, 417 B.R. 896, 901 (Bankr. W.D. Tenn. 2009) (citing *Meyers v. Internal Revenue Service (In re Meyers)*, 196 F.3d 622, 624 (6th Cir. 1999) (quoting *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991))).

This construction of the operative Bankruptcy Code section in favor of the Elliotts is noteworthy in exploring the four underlying claims presented by the Trustee, with each such claim necessarily sounding in different alleged conduct and being composed of different statutory elements.

### a. Section 727(a)(2)

Section 727(a)(2) of the Bankruptcy Code provides for the denial of a debtor's discharge where:

> . . . the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition. . .

11 U.S.C. § 727(a)(2).

Since such a claim necessarily sounds in fraud, ". . . § 727(a)(2) is subject to Rule 9(b)." *Guerriero v. Kilroy (In re Kilroy)*, 354 B.R. 476, 489 (Bankr. S.D. Tex. 2006). *See also Matheny v. Maier (In re Maier)*, 498 B.R. 340, 347 (Bankr. M.D. Fla. 2013) ("Section 727(a)(2)(A) creates a cause of action for transferring or concealing property of the debtor with the intent to hinder, delay, or defraud creditors. Additionally, the more stringent pleading requirements of Rule (9)(b) must be met in this instance."); *Labbadia v. Martin (In re Martin)*, Nos. 18-31636 (AMN), 19-03001 (AMN), 2019 Bankr. LEXIS 2415, at *19 (Bankr. D. Conn. Aug. 2, 2019) ("Further, § 727(a)(2)(A) is subject to the Rule 9(b) particularity requirements.") (citing *In re Demas*, 150 B.R. 323, 328 (Bankr. S.D.N.Y. 1993)).

Under the heightened pleading requirements of Rule 9, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). As noted by the United States District Court for the District of North Dakota, gathering pertinent holdings from the Eighth Circuit:

> "Therefore, the party must typically identify the 'who, what, where, when, and how' of the alleged fraud." "This requirement is designed to enable defendants to respond 'specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct.'" "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."

11

*Borsheim Builders Supply, Inc. v. Merrick Bank Corp.*, 387 F. Supp. 3d 957, 963 (D.N.D. 2019) (quoting *United States ex rel. Costner v. URS Consultants, Inc*., 317 F.3d 883, 888 (8th Cir. 2003); *Abels v. Farmers Commodities Corp*., 259 F.3d 910, 920 (8th Cir. 2001); *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (quoting *Commercial Prop. Invs. v. Quality Inns Int'l Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)). This means, among other things, that "[t]o satisfy Rule 9(b), a plaintiff must plead facts as to the place and time of each defendant's fraudulent conduct." *Kraft v. Essentia Health*, 600 F. Supp. 3d 965, 974 (D.N.D. 2021) (citing *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018)).

Here, the Trustee alleges Section 727(a)(2) to be implicated by the Debtors' (i) "granting a second mortgage in their real estate," and (ii) "transferring a motor vehicle to their daughter after the case was converted to a Chapter 7." Complaint, DE #1, at ¶ 26. Yet the Complaint does not allege how the second mortgage was taken with the requisite "intent to hinder, delay, or defraud." 11 U.S.C. § 727(a)(2). To the contrary, a mortgage would innately appear to be a transaction undertaken for reasonably equivalent value, with the Debtors receiving cash in exchange for the lien given to a lender, on a dollar-for-dollar basis. If anything, it is more difficult (albeit certainly not impossible) to exempt cash than it is to exempt equity in a homestead. And there is accordingly some difficulty—absent a more thorough allegation—in parceling together how the taking of a second mortgage from an entity the Trustee does not allege to be an insider, on terms the Trustee does not allege to be usurious, could give rise to a Section 727(a)(2) claim.

Equally, the Complaint does not specify why transferring an automobile to the Debtors' daughter—"as a graduation gift," Complaint, DE #1, at ¶ 13—would be an action undertaken with the "intent to hinder, delay, or defraud." To the contrary, and absent significantly more, it would necessarily seem that transferring a used vehicle to one's child as a graduation gift would be a

12

transaction undertaken with the intent of giving one's child a graduation gift. This is not a vehicle that was fenced to a chop shop and pieced off on the black market; all the Complaint topically alleges is that one of the Debtors (and it is not clear which) conveyed a used vehicle to their child—something rather benignly consistent with the grand American tradition of hand-me-down vehicles.

As stated, these allegations do not form the foundation of a colorable Section 727(a)(2) claim. There is no contention the mortgage was given for anything other than reasonably equivalent value and there is no contention a parental gift was anything more than an effort to put a child behind the wheel of an automobile. It is not merely that the Complaint falls short of the exacting rigors of Rule 9 on this front; it is, too, that the Complaint falls well shy of the rigors of *Iqbal* and *Twombly* in setting forth this claim.

Equally important, these allegations are intrinsically tied to Count I of the Complaint. If that count fails—as is urged *supra*—the at-issue transactions become wholly immaterial in nature, representing the post-petition transmutation of assets seemingly beyond the scope of the Debtors' estate. Dismissal of the Section 727(a)(2) claim is not dependent on dismissal of the Section 348(f)(2) claim, but dismissal of the Section 727(a)(2) claim is certainly bolstered by dismissal of the Section 348(f)(2) claim.

### b. Section 727(a)(3)

The Complaint also posits the Elliotts should be denied a discharge pursuant to Section 727(a)(3) of the Bankruptcy Code, which provides for such where:

> . . . the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. . .

11 U.S.C. § 727(a)(3).

Even sans the heightened pleading rigors of Rule 9 (and the Debtors do not contend this portion of Count II to sound in fraud), the Complaint does not adequately state a claim for relief on this front. The pertinent allegation, following a standardized incorporation of preceding paragraphs, reads, *en toto*:

> The Debtors have concealed, destroyed, or failed to keep or preserve any recorded information, including books, documents, records and papers from which the Debtors' financial condition or business transactions might be ascertained. The Debtor has not kept business records and has not provided business records to the trustee reflecting income and expenses which could be used to ascertain Debtor's business condition and transactions. The Debtor claims he spent a significant amount of money on gunpowder, purchased shells, luxury sports items, and did not keep any books, records, receipts, or documents from which his financial condition or business transactions might be ascertained. The Debtors' discharge should be denied pursuant to 11 U.S.C. § 727(a)(3).

Complaint, DE #1, at ¶ 24.

Breaking down the aforementioned paragraph, there are three substantive component sentences. The first sentence is an almost-verbatim recitation of Section 727(a)(3) and thusly qualifies as the sort of threadbare, conclusory allegation that is expressly insufficient under *Iqbal* and *Twombly*.

The second sentence is similarly threadbare: "The Debtor has not kept business records and has not provided business records to the trustee reflecting income and expenses which could be used to ascertain Debtor's business condition and transactions." It is not clear what business records are being referenced by the Trustee; in fact, the Complaint does not even allege in what business the Debtors operate, let alone what records would flow from that business. Equally, this sentence speaks to "The Debtor" in the singular, yet there are two Debtors, rendering less-than-clear the extent to which the Trustee takes aim at the discharge of both.

The third sentence is slightly more specific but still problematic: "The Debtor claims he spent a significant amount of money on gunpowder, purchased shells, luxury sports items, and did

14

not keep any books, records, receipts, or documents from which his financial condition or business transactions might be ascertained." From the word "he," it can be readily deduced that this is a reference to Mr. Elliott. And, no doubt, the enumeration of "gunpowder, . . . shells, [and] luxury sports items" does allow better insight into the allegedly missing records. But the enumeration also proves facially problematic, insofar as the Trustee does not allege—and, it would seem, is not likely to allege—that these are business-centric purchases for which persons would ordinarily keep records.

Inherent in Section 727(a)(3) is the notion that the missing records are ones a debtor would otherwise be expected to maintain. *Floret, L.L.C. v. Sendecky (In re Sendecky)*, 283 B.R. 760, 764 (B.A.P. 8th Cir. 2002). As explained by a neighboring court:

> . . . debtors have a duty to preserve those records that others in like circumstances would ordinarily keep.
>
> Some factors to consider in whether the debtor's failure to keep records is justified include the debtor's education, sophistication, and business experience, size and complexity of debtor's business, debtor's personal financial structure, and any special circumstances that may exist.

*Miller v. Pulos (In re Pulos)*, 168 B.R. 682, 692 (Bankr. D. Minn. 1994) (citing *Meridian Bank v. Alten*, 958 F.2d 1226, 1231 (3d Cir. 1992); *Krohn v. Frommann (In re Frommann)*, 153 B.R. 113, 117 (Bankr. E.D. N.Y. 1993); *Middlefield Banking Co, v. Kassoff (In re Kassoff)*, 146 B.R. 194, 200 (Bankr. N.D. Ohio 1992); *Nisselson v. Wolfson (In re Wolfson)*, 139 B.R. 279, 287 (Bankr. S.D.N.Y. 1992); *Anderson v. Wiess (In re Wiess)*, 132 B.R. 588, 592 (Bankr. E.D. Ark. 1991)). *See also* 6 Collier on Bankruptcy P 727.03 ("If the occupation or business is of a kind in which persons normally would not keep books or records, failure by the debtor so to do does not bar the discharge. It has even been said that a business may be so small that no books or records are required to be kept, although it would seem that not the size of the business but its complexity fixes the bounds of the duty.") (citing *Simcich v. Haugen (In re Haugen)*, 9 B.R. 4 (Bankr. S.D.

15

Fla. 1980); *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290 (10th Cir. 1997); *Floret, L.L.C. v. Sendecky (In re Sendecky)*, 283 B.R. 760 (B.A.P. 8th Cir. 2002); *In re Popik*, 18 F. Supp. 717 (E.D.N.Y. 1937); *Baker v. Trachman*, 244 F.2d 18 (2d Cir. 1957); *Karr v. Marshall*, 262 F.2d 358 (2d Cir. 1959); *Davis v. Wolfe (In re Wolfe)*, 232 B.R. 741 (B.A.P. 8th Cir. 1999)).

The Complaint never alleges the nature of Mr. Elliott's business, much less how—if at all—gunpowder, shells, and luxury sports items would be correlative to the business. Yet to the extent these items are mere accessories of a hobby (even if that hobby is occasionally monetized), case law instructs there is no duty to preserve records in the first instance. *See Brown*, 103 F.3d at 1295 ("In its analysis, the district court noted that it was uncontroverted that the car collection was a hobby, not a business entered into for profit, and cash sales in this hobby were commonplace. Thus, the district court found that any failure to keep records was justified on the facts of the case.").

In short, the Trustee has not alleged that these are records Mr. Elliott had a duty to preserve, much less set forth allegations showing why Mr. Elliott ought to be denied a discharge—a palpably harsh remedy—for failing to keep such books and records. The claim for violation of Section 727(a)(3) is accordingly unsustainable in its current form.

### c. Section 727(a)(4)

The Complaint next invokes Section 727(a)(4), which provides for a denial of discharge where a debtor:

> . . . knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account; (B) presented or used a false claim; (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs. . .

11 U.S.C. § 727(a)(4).

Just as with claims under Section 727(a)(2), those under Section 727(a)(4) sound in fraud and, as such, are subject to the heightened pleading rigors of Rule 9. *See, e.g.*, *In re Carmell*, 424 B.R. 401, 418 (Bankr. N.D. Ill. 2010) ("Since § 727(a)(4)(A) requires that debtor acted fraudulently, pleading a claim under this section is subject to Rule 9(b) Fed.R.Civ.P., made applicable by Rule 7009 Fed. R. Bankr.P., which requires allegations of fraud to be pleaded with particularity.") (citing *In re Irmen*, 379 B.R. 299, 310 (Bankr. N.D. Ill. 2007)); *In re Stewart*, 577 B.R. 581, 585 (Bankr. W.D. Okla. 2017) ("At the outset, an element of any claim under § 727(a)(4) is fraudulent intent. Thus, the complaint must meet the particularity requirements of Rule 9(b). To plead fraud adequately, a plaintiff must 'set forth the who, what, when, where and how of the alleged fraud.' In other words, a complaint alleging fraud must identify the 'time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'") (quoting *United States ex rel. Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (quoting *Thompson v. Columbia/HCA Health care Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)); *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991))).

Here, the Complaint posits that "[t]he Debtors committed false oath by failing to disclose assets, including tools, accounts receivable, and other assets, and diverted funds which could have been used to fund Chapter 13 payments, and instead purchased other assets which were not disclosed to the trustee and transferred assets." Complaint, DE #1, at ¶ 25.

Yet the Complaint does not actually flesh out these allegations in a level of detail that comports with Rule 9. The two assets supposedly not properly disclosed are tools and accounts receivable. However, nowhere does the Complaint otherwise speak to the existence of accounts receivable and it is genuinely unclear what is being alleged in terms of such receivables. The

17

Trustee has not specified the "who, what, where, when, and how" of this alleged fraud—the Complaint does not recite which Debtor is owed monies constituting receivables, which documents were signed under oath that did not faithfully recite such receivables, when those documents were signed, or how the receivables were withheld. Logic dictates one might surmise the at-issue documents to be the Debtors' schedules but, even then, the Trustee has not alleged when the receivables came into existence (ie, if they were even extant at the time the schedules were executed), what receives are actually owed, to which Debtor they are owed, or the amount of said receivables. And lest the amount seem superfluous, such necessarily goes to materiality; a bona fide, likely collectible, industrial receivable of $100,000 would raise myriad issues and cause the Debtors to approach such allegations with palpable concern, whereas a theory of a neighbor being bound to repay $5 advanced at a stadium concession stand might invite a far different approach to how this case is defended.

Similarly, while the Complaint does allege tools were purchased, the details are sufficiently murky as to fall shy of Rule 9's mandate. The "when" matters a great deal here, since a pre-petition purchase would invite questions about schedules whereas a post-petition purchase would not. The "who" also matters; the Complaint references Schedule C to the Debtors' tax returns, Complaint, DE #1, at ¶ 9, yet Schedule C ordinarily shows activity carried out by a business owned by a filing individual, not activities undertaken by the individual in her or his personal capacity. So if the Trustee is alleging a business owned by one or both Debtors purchased tools, it would be altogether sensible for the Debtors to not schedule such corporate assets as personal assets—doing otherwise would be to disregard the corporate form. By contrast, if the Trustee is alleging these to be personal assets, the Complaint needs to point to something aside from Schedule C as a basis for the existence of such tools, the value of such tools, and the time of such tools' acquisition.

18

The only other assets referenced as giving rise to this cause of action are "other assets." Complaint, DE #1, at ¶ 25. Suffice it to posit such a description, almost by definition, falls short of the rigors of Rule 9.

### d. Section 727(a)(6)

Finally, the Trustee seeks a denial of the Debtors' discharge under Section 727(a)(6), which provides for such where "the debtor has refused, in the case— (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify. . ." 11 U.S.C. § 727(a)(6). In support of this claim, the Complaint points to a turnover order and the Debtors' alleged failure to furnish "working papers for the Debtors' 2020, 2021, 2022, and 2023 tax returns," as well as "paperwork, including invoices, quotes, and estimates for work the Debtor performed for his business for which he was paid for the period June 1, 2023 to the current date." Complaint, DE #1, at ¶ 28.

This claim is not subject to the heightened pleading standards of Rule 9, but nonetheless requires a showing of a party's ability to comply with a given court order in the first instance. *See, e.g.*, 6 Collier on Bankruptcy P 727.09 (". . . an objection to discharge has been denied when the debtor's failure to comply with an order was due to inability to comply, inadvertence or mistake, as opposed to willful, intentional disobedience or dereliction.") (citing *Commerce Bank & Trust Co. v. Burgess (In re Burgess)*, 955 F.2d 134 (1st Cir. 1992); *Friendly Finance Discount Corp. v. Jones (In re Jones),* 490 F.2d 452 (5th Cir. 1974); *Bissett Nursery Corp. v. Meyer (In re Meyer)*, 2020 Bankr. LEXIS 1825 (Bankr. E.D.N.Y. July 9, 2020); *Wilmington Trust Co. v. Borg-Warner Acceptance Corp. (In re Jarrell)*, 129 B.R. 29 (Bankr. D. Del. 1991); *United States v. Richardson (In re Richardson)*, 85 B.R. 1008 (Bankr. W.D. Mo. 1988)).

The key, accordingly, is not merely alleging that the Debtors have failed to comply with a turnover order but, too, making allegations sufficient to show the Debtors have an ability to comply with a turnover order. And this is not mere form over substance; while the actual turnover order is extraneous to the Complaint and thusly outside purview of this motion, *McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 788 (8th Cir. 2007), a review of the docket in the main case shows the Debtors are being ordered to produce some very precise—if not esoteric—documents. The Trustee must, at minimum, allege that the Debtors actually have these documents in their possession, custody and control and, as such, an ability to produce them. Failing such, the Trustee may have an interesting basis for taking the Rule 2004 exam of third party record holders, but does not have the foundation requisite to pursue a Section 727(a)(6) claim in this adversary proceeding.

## VI. Conclusion

WHEREFORE, the Elliotts respectfully pray this Honorable Court (i) dismiss this adversary proceeding; and (ii) afford such other and further relief as may be just and proper.

Respectfully Submitted,

Dated: September 9, 2024    By:    /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com
*Counsel for the Defendants*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of September, 2024, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig