United States Bankruptcy Court
District of North Dakota

Doeling,
    Plaintiff

Adv. Proc. No. 24-07012-skh

Elliott,
    Defendant

# CERTIFICATE OF NOTICE

District/off: 0868-3      User: admin      Page 1 of 1
Date Rcvd: Dec 06, 2024      Form ID: pdf2some      Total Noticed: 1

The following symbols are used throughout this certificate:
**Symbol    Definition**

+      Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Dec 08, 2024:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| dft | + | Andy Baron Elliott, 1408 West Pheasant Ridge Dr, Watford City, ND 58854-7837 |

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Dec 08, 2024      Signature:      /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on December 6, 2024 at the address(es) listed below:

| Name | Email Address |
|---|---|
| GENE W. DOELING | on behalf of Plaintiff Gene W. Doeling gene@kaler-doeling.com  heather@kaler-doeling.com,mn20@ecfcbis.com |
| Maurice VerStandig | on behalf of Defendant Andy Baron Elliott mac@mbvesq.com mac@dakotabankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email |
| Maurice VerStandig | on behalf of Defendant Sandra Leah Elliott mac@mbvesq.com mac@dakotabankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email |

TOTAL: 3

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In Re: | Bankruptcy No. 21-30420 |
| Andy Baron Elliott,<br>Sandra Leah Elliott, | Chapter 7 |
|     Debtors.<br>_____/ | |
| Gene W. Doeling, as Bankruptcy Trustee for<br>the Bankruptcy Estate of Andy Baron Elliott<br>and Sandra Leah Elliott, | |
|     Plaintiff, | |
| v. | Adversary No. 24-07012 |
| Andy Baron Elliott,<br>Sandra Leah Elliott, | |
|     Defendants.<br>_____/ | |

**ORDER**

**I.    INTRODUCTION**

On August 13, 2024, Gene W. Doeling, Bankruptcy Trustee for the Bankruptcy Estate of Andy Baron Elliott and Sandra Leah Elliott, filed an Adversary Complaint against Debtor/Defendants Andy and Sandra Elliott. In his Complaint, the Trustee seeks a finding that the Elliotts converted from Chapter 13 to Chapter 7 in bad faith; a denial of the Elliotts' discharge for failing to maintain records, making false oaths, failing to comply with court orders, and other fraudulent conduct; and a money judgment for costs of the action. Doc. 1. The Elliotts filed a Motion to Dismiss, arguing the Trustee failed to state a claim upon which relief may be granted. Doc. 4. For the reasons that follow, the Court denies the motion in part and grants it in part.

Certificate of Notice Page 3 of 17

## II. FACTS

In the context of this motion, the Court considered the factual allegations in the Trustee's Complaint, accepting them as true and construing all reasonable inferences in favor of the Trustee.

## III. ANALYSIS

### A. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure, applicable in this adversary proceeding under Federal Rule of Bankruptcy Procedure 7012(b), specifies that a party may move to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true the factual allegations in the complaint and construes all reasonable inferences in favor of the nonmoving party. Par v. Wolfe Clinic, P.C., 70 F.4th 441, 445 (8th Cir. 2023). Accordingly, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Norgren v. Minn. Dep't of Hum. Servs., 96 F.4th 1048, 1054 (8th Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2007)). "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Kelly v. City of Omaha, 813 F.3d 1070, 1075 (8th Cir. 2016) (quoting Iqbal, 556 U.S. at 678). "'[C]onclusory statements' and 'naked assertion[s] devoid of further factual enhancement'" are insufficient to satisfy this standard. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768 (8th Cir. 2012) (alteration in original) (citation omitted).

2

Although courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; without converting the motion into one for summary judgment." Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017); see also Dittmer Props., L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013) ("Because these two documents are referred to either directly (the POA) or by inference (the amended partnership agreement) in the complaint and their authenticity is not questioned, we find that the district court appropriately considered them in ruling on the motion to dismiss.").

### B. Bad Faith Conversion Under 11 U.S.C. § 348(f)(2)

When a debtor elects to convert his or her bankruptcy case from a Chapter 13 case to Chapter 7 case, property acquired postpetition is property of the debtor, unless the debtor converts the case in bad faith. 11 U.S.C. § 348(f). If the debtor converted to Chapter 7 in bad faith, "the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion." 11 U.S.C. § 348(f)(2).

"'Bad faith' is not defined in the Bankruptcy Code, leaving courts to fashion their own definitions." SL Corp. v. Malone (In re Malone), 2011 WL 1541289, at *3 (Bankr. D. Neb. Apr. 21, 2011); see also Pancic v. Lokan (In re Lokan), 2023 WL 4014086, at *4 (B.A.P. 9th Cir. June 14, 2023). In the Eighth Circuit, courts examine the totality of the circumstances to determine whether a debtor acted in bad faith. Steiner v. Wilmington Sav. Fund Soc'y (In re Steiner), 613 B.R. 176, 178 (B.A.P. 8th Cir. 2020).

3

Some courts consider the following circumstances in analyzing whether the facts show bad faith under section 348(f)(2):

> In determining whether a Chapter 13 case has been converted in bad faith, the Court considers whether the conversion was motivated by an inability to make required payments to the Chapter 13 trustee. The Court also considers whether the debtors have been forthcoming regarding the existence of any post-petition change in circumstances that might affect their ability to make payments to their creditors and whether the conversion would create a windfall for the debtors (other than a decrease in liabilities) to which they would not have been entitled but for the existence of their pending Chapter 13 case.

In re Lien, 527 B.R. 1, 7-8 (Bankr. D. Minn. 2015) (quoting Moser v. Mullican (In re Mullican), 417 B.R. 389, 401 (Bankr. E.D. Tex. 2008), aff'd, 417 B.R. 408 (E.D. Tex. 2009)). Courts also evaluate "the timing of the conversion, the chapter 13 pay history, the debtor's participation in the chapter 13 process, the amount of post-petition debt, ... the debtor's previous bankruptcy filings, and the value of assets in question." Id. at 8 (quoting In re Smith, 2012 WL 43647, at *3 (Bankr. N.D. Ohio Jan. 9, 2012)). Other courts opine that section 348(f)(2) requires a showing that the debtor deliberately abused the bankruptcy process. See Harris v. Viegelahn, 575 U.S. 510, 518 (2015); In re Malone, 2011 WL 1541289, at *3 ("For purposes of § 348(f)(2), it generally is found in situations where the weight of the evidence indicates the debtor is dishonest, deceptive, or unfairly manipulating the bankruptcy system.").

The Trustee claims that "Debtors had the means to make their Chapter 13 payments, but deliberately chose not to make Chapter 13 payments while purchasing various assets including luxury recreational items, including but not limited to guns, ammunition, travel, motor vehicles, trailers, tools, and other assets and transferring those assets." Doc. 1 at ¶ 20. The Trustee alleged factual details supporting this claim, including sources of income available to the Elliotts such as deposits in their bank

4

account totaling $16,459 in November 2023, $16,430 in December 2023 and $48,546 in the first nine days of January 2024—just before the Court converted the Elliotts' case on January 9, 2024. The Trustee also alleged Debtor Andy Elliott reported gross business receipts totaling $462,000 in 2021 and $765,000 in 2022.

In support of his claim that the Elliotts elected to spend available funds on recreational purchases, transfers and gifts rather than Chapter 13 plan payments, the Trustee listed the Elliotts' purchases at firearm vendors, sporting goods stores and recreational vehicle dealers;[1] gifts or transfers to their children; and large unexplained cash withdrawals two months before the Elliotts sought to convert their Chapter 13 case. The Trustee alleges that the Elliotts purchased these items, spent money and transferred assets to their children while failing to make Chapter 13 plan payments and claims that this conduct demonstrates a deliberate plan to manipulate their bankruptcy filing.

Granting all reasonable inferences to these factual allegations, together with the Trustee's other allegations regarding the Elliotts' failure to disclose assets and information and the Elliotts' decision to encumber equity in their house, the Court finds that the Trustee stated a plausible cause of action for bad faith conversion under section 348(f)(2). The Elliotts' motion to dismiss the Trustee's claim under section 348(f)(2) is denied.

---

[1] For example, the Elliotts allegedly spent $1,384 at Big Boy Toys on June 8, 2023, and $1,883.70 at Lundemo Firearms on October 19, 2023. Both of these purchases total sums larger than the Elliotts' Chapter 13 plan payments and occurred several months before the Elliotts filed their Notice to Convert.

5

    **C.**    **Denial of Discharge Under 11 U.S.C. § 727**

        **1.**    **§ 727(a)(2)(A)**

To survive the Elliotts' motion to dismiss his cause of action under section 727(a)(2)(A), the Trustee must allege facts sufficient to draw a reasonable inference that "(1) Debtor's act or actions took place within one year before the petition date; (2) the act was that of Debtor; (3) Debtor transferred, removed, destroyed, mutilated or concealed property; and (4) Debtor took these acts with an intent to hinder, delay or defraud a creditor or the Trustee." Kaler v. Persson (In re Persson), 2022 WL 1547702, at *14 (Bankr. D.N.D. May 16, 2022) (citing Georgen-Running v. Grimlie (In re Grimlie), 439 B.R. 710, 716 n.11 (B.A.P. 8th Cir. 2010)).

The Trustee alleges the Elliotts "transferred property of the Debtor within one year before the date of the filing of the Chapter 7 petition, by transferring cash and a GMC motor vehicle to his children." Doc. 1 at ¶ 27.[2] The Elliotts petitioned for relief under Chapter 13 of the Bankruptcy Code on September 28, 2021. According to paragraph 13 of the Complaint, the Elliotts transferred cash to their children in December 2023, and Andy Elliott transferred title to a GMC pickup to his daughter in January 2024. Pursuant to section 348(a), "the date of the filing of the petition"

---

[2] The Trustee acknowledges he mislabeled the section 727(a)(2) subsections in paragraphs 26 and 27 of his Complaint. In paragraph 26, the Trustee alleges the Elliotts transferred property of the bankruptcy estate postpetition, but he asks for a denial of discharge under section 727(a)(2)(A), which applies to prepetition conduct. In paragraph 27, the Trustee alleges the Elliotts transferred their property within one year of the petition, but he seeks a denial of discharge under section 727(a)(2)(B), which applies to postpetition conduct. Given the allegations, the elements listed and the claims, the Court accepts the Trustee's representation that the subsections were mislabeled and addresses the substance of his claims.

6

referenced in section 727(a)(2)(A) remained September 28, 2021.[3] The conversion date is irrelevant for purposes of this analysis. Accordingly, the Elliotts' cash and vehicle transfers took place postpetition and do not fall within the scope of section 727(a)(2)(A).

The Trustee failed to highlight any prepetition conduct or transactions that support a plausible claim under section 727(a)(2)(A), and the Court found none in his Complaint. The Elliotts' motion to dismiss this cause of action is granted. This claim is dismissed without prejudice.

### 2. § 727(a)(2)(B)

To survive the Elliotts' motion to dismiss his cause of action under section 727(a)(2)(B), the Trustee must allege facts sufficient to draw a reasonable inference that (1) postpetition; (2) Debtors; (3) transferred, removed, destroyed, mutilated or concealed property of the estate; and (4) Debtors took these acts with an intent to hinder, delay or defraud a creditor or the Trustee. McDermott v. Petersen (In re Petersen), 564 B.R. 636, 647 (Bankr. D. Minn. 2017).

The Elliotts contend that the Trustee failed to plead this claim with sufficient particularity based on the heightened pleading requirements imposed by Rule 9(b) of

---

[3] Section 348(a) provides:

> Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

11 U.S.C. § 348(a).

7

the Federal Rules of Civil Procedure.[4]  "Because fraudulent intent is an element of § 727(a)(2), Rule 9(b)'s heightened pleading standard must be satisfied."  Rutan v. Johns (In re Johns), 2023 WL 2412743, at *2 (Bankr. N.D. Tex. Mar. 8, 2023); Crowder v. Wilbur (In re Wilbur), 2017 WL 6397722, at *5 (Bankr. N.D. Ga. Dec. 13, 2017); Grochocinski v. Campbell (In re Campbell), 475 B.R. 622, 628-29 (Bankr. N.D. Ill. 2012); Tri Supply & Equip. v. Brady (In re Brady), 458 B.R. 814, 822 (Bankr. D. Del. 2011).  Although Rule 9(b) imposes a more exacting pleading standard, the "special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice."  Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001). The plaintiff must allege "circumstances constituting fraud." Id.; Fed. R. Civ. P. 9(b).  In other words, plaintiffs must "plead the 'who, what, where, when, and how.'" Ascente Bus. Consulting, LLC v. DR myCommerce, 9 F.4th 839, 845 (8th Cir. 2021) (quoting Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC, 949 F.3d 417, 421 (8th Cir. 2020)).

      The Trustee alleges the Elliotts transferred property postpetition with the intent to hinder, delay or defraud by granting a second mortgage on their house after their case was converted to a Chapter 7 case and transferring a vehicle to their daughter.  In support of the first element of this cause of action, the Trustee alleges facts showing that the Elliotts' residence is property of the bankruptcy estate.  According to paragraph 4 of the Complaint, the Elliotts owned a house in Watford City, North Dakota, that they valued at $370,000 on the petition date with a scheduled secured claim against it

---

[4] Rule 9(b) is made applicable to this adversary by Rule 7009 of the Federal Rules of Bankruptcy Procedure.

8

totaling $322,835.  They maintained possession and control of the house on January 9, 2024, the conversion date.  From the petition date to the conversion date, the Elliotts reduced their mortgage debt to $296,136, resulting in $73,864 in equity (assuming the value of the house remained constant and there were no other encumbrances against the house).  Under section 348(f)(1), the house is property of the bankruptcy estate, and any postpetition, preconversion increase in equity resulting from appreciation or mortgage satisfaction inured to the benefit of the Chapter 7 bankruptcy estate. See Goetz v. Weber (In re Goetz), 95 F.4th 584, 590 (8th Cir. 2024).

In support of the second and third elements of his section 727(a)(2)(B) claim, the Trustee argues the Elliotts voluntarily transferred the equity in the house when they granted a second mortgage against the house.  More specifically, the Trustee alleges in paragraph 6 of the Complaint: "In February 2024, after they converted their Chapter 13 bankruptcy to a Chapter 7 bankruptcy, the Debtors took out an additional $73,445.96 HUD loan from Freedom Mortgage and granted a second mortgage against their property."  Under section 101(54), "[t]he term "transfer" means . . . the creation of a lien."  See 11 U.S.C. § 101(54).  The Trustee alleged with particularity the circumstances showing the Elliotts transferred property of the estate postpetition. These allegations are sufficient to create a reasonable inference that the Trustee met his burden of proving the first three elements of his section 727(a)(2)(B) cause of action.

Likewise, the Trustee alleges that the Elliotts transferred a vehicle (which he claims is property of the estate) to their daughter after the Chapter 7 conversion.  More specifically, he alleges: "The Debtor also transferred a GMC pickup to his daughter as a graduation gift, the title being transferred on or about January 10, 2024."  These

9

allegations, which the Court finds are alleged with particularity, are sufficient to create a reasonable inference that the Trustee met his burden of proving the first three elements of his section 727(a)(2)(B) cause of action.

In support of the last element of his section 727(a)(2)(B) claim, the Trustee alleges that the Elliotts transferred a motor vehicle and equity in the house "with intent to hinder, delay, or defraud a creditor or an officer of the bankruptcy estate."[5] After reviewing the allegations specific to the Trustee's section 727(a)(2)(B) cause of action as well as the Trustee's other allegations regarding transfers to insiders and dissipating cash, and granting all reasonable inferences to these alleged facts, the Court finds that the Trustee's allegations regarding the Elliotts' intent are sufficient under Rule 12(b)(6) and Rule 9(b) to state a plausible claim for relief under section 727(a)(2)(B). See Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). The Trustee pled a plausible claim under section 727(a)(2)(B). The Elliotts' motion to dismiss this cause of action is denied.

---

[5] The Elliotts argue that receiving reasonably equivalent value for a mortgage cannot evidence fraudulent intent, and the Trustee failed to meet Rule 9(b)'s pleading standard. In his response to the Elliotts' motion, the Trustee argues that the Elliotts removed the equity in their home to utilize North Dakota's in lieu of homestead exemption to exempt otherwise nonexempt property. The Elliotts' argument and the Trustee's response raise questions of fact that are not appropriate to resolve in the context of a Rule 12(b)(6) motion to dismiss. Without evidence, it is not clear whether the bankruptcy estate or the Elliotts received "reasonably equivalent value" in exchange for the mortgage lien against the property. Without evidence, it is not clear whether the Elliotts' exemptions support the Trustee's claims. See Addison v. Seaver (In re Addison), 540 F.3d 805, 813 (8th Cir. 2008) ("The question of whether an individual acted with intent to defraud in converting non-exempt property into exempt property is a question of fact."); Sanders v. W & W Wholesale Inc., 2011 WL 4840978, at *2 (N.D. Ill. Oct. 12, 2011) ("[I]ssues concerning a state of mind such as knowledge or willfulness often involve fact-intensive inquiries and are not ordinarily resolved at the motion to dismiss stage.").

### 3. § 727(a)(3)

To survive the Elliotts' motion to dismiss his cause of action under section 727(a)(3), the Trustee must allege facts sufficient to draw a reasonable inference "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." Snyder v. Dykes (In re Dykes), 954 F.3d 1157, 1163 (8th Cir. 2020) (quoting Meridian Bank v. Alten, 958 F.2d 1226, 1232 (3d Cir. 1992)).

> The test is "whether there is available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained." "The debtor is required to take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate." If the Trustee meets that initial burden, "the burden of production shifts to the debtor to offer a justification for his record keeping (or lack thereof); however, the objecting party bears the ultimate burden of proof with respect to all elements of this claim."

Id. (citations omitted).

Courts often evaluate factors such as the debtor's "education, experience, and sophistication of the debtor; [and] the volume and complexity of the transactions" to determine whether a debtor was required to maintain certain records. Id. Unfortunately, courts citing these factors "tend to become conflated and confused" between the plaintiff's prima facie burden and the debtor's burden to justify its record keeping. D.A.N. Joint Venture v. Cacioli (In re Cacioli), 463 F.3d 229, 236 (2d Cir. 2006). These factors are relevant to the debtor's burden to justify its failure to maintain records, not the trustee's prima facie burden. Id; see also In re Dykes, 954 F.3d at 1163 ("In determining w*hether a debtor's record keeping was justified*, the Bankruptcy Code 'requires the trier of fact to make a determination based on all the circumstances of the case.'" (emphasis added)).

11

The Trustee alleges the Elliotts "concealed, destroyed, or failed to keep or preserve any recorded information, including books, documents, records and papers from which the Elliotts' financial condition or business transactions might be ascertained." Doc. 1 at ¶ 24. According to paragraph 8 of the Complaint, the Elliotts generated $462,000 in "gross business receipts" in 2021 and $765,000 in gross business receipts in 2022. The Trustee also alleges the Elliotts failed to comply with the Court's April 26, 2024, Order requiring them to turn over "copies of all working papers with the Debtors' 2020, 2021, 2022, and 2023 tax returns" and "copies of all paperwork, including invoices, quotes, and estimates for work Debtor Andy Elliott performed for his business for which he was paid for the period of June 1, 2023 to current date." Doc. 1 at ¶ 19. Further, the Trustee alleges that Andy Elliott "claims he spent a significant amount of money on gunpowder, purchased shells, luxury sports items, and did not keep any books, records, receipts, or documents from which his financial condition or business transactions might be ascertained." In paragraphs 10 and 11 of his Complaint, the Trustee highlights numerous transactions between the Elliotts and sporting goods stores and RV dealerships between June 2023 and August 2023.

The Trustee's allegations suggest the Elliotts have not provided business records and receipts or other records evidencing personal purchases, but it is not clear this conduct falls within the scope of section 727(a)(3). See Sloane v. Allen (In re Allen), 572 B.R. 440, 457 (Bankr. D.D.C. 2017) ("However, establishing a failure to produce documents when requested does not, alone, establish that the debtor 'concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information' in order to justify denial of a discharge under § 727(a)(3)."). In other words, he does not

12

allege any specific facts that create a reasonable inference that the Elliotts concealed or destroyed records (as opposed to the Elliotts refusing to provide the records). He also does not allege facts that indicate the Elliotts failed to keep and preserve business records other than pointing to the Elliotts' noncompliance with the Order for Turnover. The Complaint includes no detail regarding Andy Elliott's interest in a business or whether the business is a sole proprietorship or a separate legal entity. Simply put, the Trustee does not allege sufficient facts showing the Elliotts concealed, destroyed, or failed to keep or preserve the recorded information, including books, documents, records and papers he needs to ascertain the Elliotts' financial condition. Therefore, the Elliotts' motion to dismiss the Trustee's claim under section 727(a)(3) is granted. This claim is dismissed without prejudice.

### 4. § 727(a)(4)

To survive the Elliotts' motion to dismiss his cause of action under section 727(a)(4), the Trustee must allege facts sufficient to draw a reasonable inference that "(1) the Debtor made a statement under oath; (2) the statement was false; (3) the Debtor knew the statement was false; (4) the Debtor made the statement with fraudulent intent; and (5) the statement related materially to the Debtor's bankruptcy case." Home Serv. Oil Co. v. Cecil (In re Cecil), 542 B.R. 447, 451 (B.A.P. 8th Cir. 2015) (citing Kaler v. Charles (In re Charles), 474 B.R. 680, 684 (B.A.P. 8th Cir. 2012)). A debtor's statements sufficient to justify a denial of discharge generally include "(1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at the examination during the course of the proceedings." United States v. Adamcik (In re Adamcik), 2021 WL 3868251, at *4 (Bankr. N.D. Tex. Aug. 27, 2021)

(quoting Beaubouef v. Beaubouef (In re Beaubouef), 966 F.2d 174, 178 (5th Cir. 1992)). As with the Trustee's claim under section 727(a)(2), "[s]ection 727(a)(4) 'sounds in fraud and, therefore, is governed by the specificity requirements of Fed. R. Bankr. P. 7009.'" Smith v. Cooper (In re Cooper), 399 B.R. 637, 645 (Bankr. E.D. Ark. 2009) (quoting Ehle v. Brien (In re Brien), 208 B.R. 255, 257 (B.A.P. 1st Cir. 1997)).

The Trustee alleges the Elliotts "committed false oath by failing to disclose assets, including tools, accounts receivable, and other assets, and diverted funds which could have been used to fund Chapter 13 payments, and instead purchased other assets which were not disclosed to the trustee and transferred assets."  Doc. 1 at ¶ 25. This cause of action includes no reference to the Elliotts' duties to disclose. Given that the focus of the Trustee's section 727(a)(4) cause of action is failure to disclose rather than false statements, this becomes a necessary element when a significant majority of the Trustee's allegations refer to postpetition conduct. Depending on the circumstances of the case, a debtor may have no duty to disclose assets acquired postpetition. See In re Boyd, 618 B.R. 133, 156 (Bankr. D.S.C. 2020) ("While the duty to disclose a substantial or significant asset that became part of the [Chapter 13] estate post-confirmation may be a desirable policy, it was simply not required in this case under the Bankruptcy Code, the Bankruptcy Rules or an order or local rule of this Court.").

Additionally, the Trustee's Complaint includes no detail regarding ownership of the accounts receivable, tools and other assets referenced in his section 727(a)(4) cause of action. To the extent the Trustee suggests that the Elliotts own a business, and the business owns the assets, it is not clear if the business is a sole proprietorship (possibly creating a duty to disclose) or whether they are owned by a separate entity

14

(possibly negating a duty to disclose). Further, there is no detail regarding the source or sum of accounts receivable, or a description of assets the Elliotts acquired prepetition that they undervalued or failed to disclose. The Trustee's allegations that the Elliotts reported gross receipts and tool expenses on their 2021 and 2022 tax returns, and bank account summaries showing that the Elliotts purchased tools or other assets after September 28, 2021, without more, are not sufficient to plead a plausible claim under section 727(a)(4). See Schindler v. Milliron (In re Milliron), 629 B.R. 893, 913 (Bankr. D. Alaska 2021) ("A plaintiff must, however, allege a 'particular false statement' to succeed on a cause of action under § 727(a)(4)(A)."). Accordingly, the Elliotts' motion to dismiss the Trustee's claim under section 727(a)(4) is granted. This claim is dismissed without prejudice.

### 5. § 727(a)(6)

Section 727(a)(6) provides that debtors cannot receive a discharge if "the debtor has refused . . . to obey any lawful order of the court." 11 U.S.C. § 727(a)(6). To survive the Elliotts' motion to dismiss his cause of action under section 727(a)(6), the Trustee must allege facts sufficient to draw a reasonable inference that "the debtor received the order in question and failed to comply with its terms." CNR Holdings, LLC v. Coffey (In re Coffey), 647 B.R. 365, 393 (Bankr. E.D. Ark. 2022). "If the objecting party meets its burden, the debtor then has 'an obligation to explain his non-compliance.'" Id. (quoting Missouri ex rel. Nixon v. Foster (In re Foster), 335 B.R. 709, 716 (Bankr. W.D. Mo. 2006)).

In paragraph 19, the Trustee alleges that on April 26, 2024, the Court ordered the Elliotts "to turn over copies of Debtors' 2023 federal and state tax returns along with

15

copies of all working papers with the Debtors' 2020, 2021, 2022, and 2023 tax returns." The Order also required turnover "of copies of all paperwork, including invoices, quotes, and estimates for work Debtor Andy Elliott performed for his business for which he was paid for the period of June 1, 2023, to current date." The Trustee also alleges the Elliotts failed to provide "any working papers with the Debtors' 2020, 2021, 2022, and 2023 tax returns, and [provided] very limited documentation or invoices, quotes, or estimates for work Debtor Andy Elliott performed which he was paid for the period June 1, 2023, to the current date." These allegations are sufficient to plausibly show that the Elliotts failed to comply with the Order. The Elliotts' arguments that the Trustee must allege that they have possession, custody and control of these documents to withstand a Rule 12(b)(6) motion are rejected. The Elliotts' motion to dismiss the Trustee's claim under section 727(a)(6) is denied.

## IV. CONCLUSION

For the reasons provided above, it is **ORDERED** that Elliotts' Motion to Dismiss is **DENIED** in part and **GRANTED** in part.

Dated: December 5, 2024.

Shon Hastings, Judge
United States Bankruptcy Court

16