IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Andy Baron Elliott | ) | Case No. 21-30420 |
| | ) | (Chapter 7) |
| and | ) | |
| | ) | |
| Sandra Leah Elliott, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| Gene W. Doeling, in his Official Capacity as Chapter 7 Trustee, | ) ) | |
| | ) | Adv. Case No. 24-07012 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Andy Baron Elliott, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MID-DISCOVERY STATUS REPORT**

Come now Andy Baron Elliott ("Mr. Elliott") and Sandra Leah Elliott ("Ms. Elliott") (collectively, the "Elliotts," "Defendants," or "Debtors"), by and through undersigned counsel, pursuant to this Honorable Court's Notice of Telephonic Mid Discovery Status Conference, DE #13, and in response to the status report (the "Report," as found at DE #20) filed by Gene W. Doeling ("Mr. Doeling" or the "Trustee") note as follows:

There is little surprise that, in a case partially premised upon allegations of suboptimal record keeping, the Trustee has found frustration in the scope of records produced by the Debtors. There is equally little surprise that the Trustee, well represented by his own counsel and that of other formidable attorneys at his firm, has been able to adeptly overcome most resulting record gaps through the strategic issuance of myriad third party subpoenas. Most transactions—by their

1

very nature—have counterparties, and the Trustee has proven deft at locating records outside the possession, custody and control of the Elliotts by propounding a litany of subpoenas on those counterparties.

Notably, the Elliots have not sought to quash a single subpoena. Nor did they seek a protective order when presented with written discovery requests (though they did interject certain objections, all being well within the bounds of ordinary litigation practice). Their position—from the outset of this case, through a deeply-briefed motion to dismiss, extending into the present—has been, and remains, that they have nothing to hide. These are hard working people in search of a fresh start, whose voyage through the rigors of chapter 13 unfortunately came up short when their disposable income proved insufficient to make plan payments. No part of their travails in bankruptcy ought to substantively invite denial of a discharge or a finding of bad faith and the Debtors, as such, have endeavored to strike an appropriate balance through offering the meager documentary cooperation permitted by their thin records whilst also affirmatively ensuring third party discovery proceed unobstructed and unhindered.

Yes, there may be some more information that can be offered, and undersigned counsel has gladly engaged multiple good faith discussions with the Trustee's counsel concerning such. Without delving too deep into the nuances of specific discovery requests, it certainly seems that information about the identity of the titleholder of an at-issue trailer ought to be furnished. Similarly, to the extent greater recollections concerning gifts of note may be memorialized in interrogatory answers, it well seems such is appropriate. And to the extent the Elliotts can themselves retrieve relevant documents with minimal issue—such as credit card statements that may be available online—they acknowledge such a production ought to be forthcoming. But it is neither pragmatic nor realistic to expect more precise attestations of details from occasions several

2

years in the past, and the full-throated support of the Trustee's third party discovery efforts thusly perseveres.

While this filing is definitionally responsive in nature, it does merit brief observation that the Elliotts have recently issued their first parcel of outgoing written discovery, coming in the form of a subpoena to their bankruptcy counsel in the main case for, *inter alia*, his communication records and client file. The Trustee, admirably, has agreed that privileged portions of the subject file need not be produced unless a defense premised upon the advice, *vel non*, of counsel is to be mounted. A file was received by the Elliotts's undersigned counsel yesterday morning (shortly before a hearing in this Honorable Court on a wholly unrelated matter) and will soon be combed accordingly. If a defense premised upon the advice, *vel non*, of counsel in the main case is going to be mounted, leave to amend the Elliotts' answer and affirmative defenses will be timely sought to formally memorialize the same.

Finally, the Defendants certainly respect the Trustee's stated intention to amend his pleading to restate causes of action previously dismissed. *See* Report, DE #20, at ¶ 7. The Elliotts will, of course, assess any such amended pleading and determine whether such is meritorious of the docketing of an answer or a successive motion to dismiss. However, the Debtors equally note that there is at least some modicum of an incongruity in the Trustee simultaneously indicating an intent to (i) amend his pleading, *id.* at ¶ 7; (ii) depose the Debtors in August 2025, *id.* at ¶ 6; and (iii) seek summary judgment shortly thereafter, *id.* at ¶ 8. While it is certainly a party's prerogative to seek summary judgment at any time before the correlative deadline, including—in certain circumstances—before discovery even opens, it does at least appear the proposed timelines in this case risk the compression of several material occurrences into a palpably limited temporal horizon. Discovery, after all, does not close until February 2026, *see* DE #19 at ¶8, and dispositive motions

3

are not due until later the same month, *id.* at ¶ 10, necessarily inviting concerns about the necessity of such a voluntary rushing of milestones.

Still, the Trustee is, of course, free to pursue his case in the manner he deems most fit. The Elliotts have endeavored to cooperatively respect such to date and will continue to do so as the matter progresses. Regardless of pacing, the Elliotts look forward to clearing their good names and appreciate this Honorable Court's time and attention in the instant case.

Respectfully Submitted,

Dated: July 9, 2025    By:    /s/ Maurice B. VerStandig
                              Maurice B. VerStandig, Esq.
                              The Dakota Bankruptcy Firm
                              1630 1st Avenue N
                              Suite B PMB 24
                              Fargo, North Dakota 58102-4246
                              Phone: (701) 394-3215
                              mac@dakotabankruptcy.com
                              *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of July, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

4