## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bky. Case No.: 21-30420 |
| | ) | Chapter 7 |
| Andy Baron Elliott, | ) | |
| Sandra Leah Elliott, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| Gene W. Doeling as Bankruptcy Trustee, | ) | **AMENDED ADVERSARY COMPLAINT** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Andy Baron Elliott, | ) | |
| Sandra Leah Elliott, | ) | |
| | ) | |
| Defendants. | ) | Adversary No. 24-07012 |
| | ) | |

Gene W. Doeling, the bankruptcy trustee ("Trustee") and plaintiff herein the above-entitled case, by and through his attorney, states and alleges as follows:

1. This is an adversary proceeding brought pursuant to Bankruptcy Rule 7001(1) and Section 727 of Title 11, United States Code and constitutes a "core" proceeding as defined in Title 28, United States Code § 157(b)(2)(H).

2. The Debtors filed a Chapter 13 bankruptcy petition in the District of North Dakota on September 28, 2021, and converted their case to Chapter 7 on January 9, 2024. The plaintiff is the duly appointed and acting Chapter 7 trustee in this case.

3. The Debtors have alleged that they were unable to make payments to the Chapter 13 plan, so they converted from Chapter 13 to Chapter 7.

4. At the time of the Debtor's bankruptcy filing and to the present, the Debtors owned a house ("House") at 1408 West Pheasant Ridge Drive, Watford City, ND, valued at $370,000 on their

original bankruptcy filing. The Debtor's scheduled a mortgage to Cardinal financial, secured by the House, in the amount of $322,835. As of March 14, 2024, the Debtors claimed to owe Freedom Mortgage[i] $296,136 on the mortgage on the House.

5. In February 2024, after they converted their Chapter 13 bankruptcy to a Chapter 7 bankruptcy, the Debtors took out an additional $73,445.96 HUD loan from Freedom Mortgage and granted a second mortgage against their property.

6. The Trustee has requested that the Debtors deliver to him their 2023 tax return, but to date they have failed to deliver that return. The Debtors have not turned over their 2023 tax return and claim that the 2023 tax returns have not been filed.

7. The Trustee has requested Debtors deliver to him all backup documentation supporting their tax returns for 2021 through 2023, but to date, they have failed to deliver those documents.

8. The Debtors' 2021 and 2022 tax returns show gross business receipts of $462,000 and $765,000, respectively.

9. From 2021 through the date of the conversion of this bankruptcy case to Chapter 7, the Debtors withdrew in excess of $200,000 in cash. The vast majority of these cash withdrawals occurred after the filing of the Chapter 13 bankruptcy case. The Debtors have failed and/or refused to identify the disposition of those funds.

10. From 2021 through the date of conversion of this bankruptcy case to Chapter 7, the Debtors purchased in excess of $100,000 in firearms and firearm-related goods, the vast majority of which were purchased after the filing of a Chapter 13 bankruptcy case. In the Debtors' initial bankruptcy documents, schedules and statement of affairs, the Debtors disclosed "fishing gear" of $2500 and no firearms. The Debtors' amended bankruptcy schedules and statement of affairs

following conversion of the case to Chapter 7 disclosed the same "fishing gear" of $2500 and no firearms. The Debtors testified at the 341 meeting following conversion of case to Chapter 7, that Debtor Andy Elliott owned only 3 to 4 firearms. Upon information and belief, the Trustee alleges that the firearms and related goods purchased during the Chapter 13 case were not necessary for the Debtor's business and were strictly for their personal use and unnecessary for their performance under the terms of the confirmed Chapter 13 plan.

11. On December 5, 2022, the Debtors gave a "donation" to Frank Oliver in the amount of $2500. On information and belief, the Trustee alleges that this was a fraudulent transfer.

12. On information and belief, the Trustee alleges that the Debtors could have easily made all Chapter 13 payments required by their confirmed Chapter 13 plan had they not squandered their money and assets as described in the three preceding paragraphs.

13. The Trustee has discovered through various purchases of consumer and business goods, that the Debtors have had access to and use of several credit cards. To the extent such credit cards existed at the time of the Chapter 13 bankruptcy filing, the failure to list those credit cards in their bankruptcy schedules and statement of affairs is a false statement under oath. To the extent those credit cards existed at the time of the conversion of this case to Chapter 7 Debtors failed to amend their bankruptcy schedules and statement of affairs to disclose the existence of these liabilities, which is a false statement under oath. The Trustee alleges, upon information and belief andbased upon the purchase of firearms and firearm related goods and payment for storage units before and after the conversion of this case to Chapter 7, that such credit cards existed.

14. The Debtors also made numerous purchases for RV accessories, despite testifying that they do not own an RV. These purchases include:

July 7, 2023, purchase at Rugby Homes and RV for $429.48;

- 3 -

   July 10, purchase at Rough Rider RV for $1,322;

   July 28 purchase at Rough Rider RV for $323.65;

   July 31 purchase at Amunrud's RV in Sydney, MT for $326.85; and,

   August 7, 2023, RV Upgrades purchase for $787.54.

  15. Debtors have since alleged that they did not own the RV in which these goods were installed and that they had some sort of agreement for use of that RV. The Trustee has repeatedly requested information regarding those transactions including identification of the owner, the title documents, and the complete nature of all agreements related to that RV. To date, the Debtors have provided no information. On information and belief, the Trustee alleges that the Debtors have some interest in the RV, which may include an ownership interest which the Debtors have refused to disclose that information in their initial bankruptcy filings, subsequent amendments, and at the 341 meeting, each of which constitutes a false oath.

  16. The Debtors executed their bankruptcy schedules under penalty of perjury and in Statement of Affairs #27 stated that they had an interest in only one corporate entity in the four years prior to filing their bankruptcy: "Blue Ink Energies".  In fact, the Debtors had an interest in five corporations at the time of the filing of the bankruptcy petition: Whiteline, Inc., Blue Ink Energies, Inc., Blue Tech Diesel, Inc., Blue Tech Diesel, LLC, and Blue Tech Diesel Technologies, Inc.. Of these entities, the North Dakota Secretary of State indicates that only Blue Tech Diesel Technologies, Inc. was active at the time of the Debtors' conversion of their bankruptcy case to Chapter 7. During the Chapter 13 case, February 22, 2023, the Debtors created and continue to own a corporation named Gray Ghost Outdoor Productions Limited. Shortly after the Debtors' conversion of their case to Chapter 7, February 2, 2024, the Debtors created and continue to own a corporation named Affliction Drone Recovery Systems LLC.

17. The Trustee has requested information regarding each of the entities described in the preceding paragraph, but the Debtors have failed or refused to provide any documentation regarding those entities. On information and belief, the Trustee alleges that the Debtors have made transfers of money and/or assets to one or more of these entities during their Chapter 13 case. Further, the Trustee alleges that one or more of these entities continue to hold assets transferred from the Debtors or owned by the Debtors at the time of the conversion of this case to Chapter 7. The Trustee alleges any transfers to these entities during the Chapter 13 case were fraudulent transfers which the Debtors should have disclosed in amended bankruptcy schedules and statement of affairs upon conversion of this case to Chapter 7.

18. The Trustee alleges that, to the extent Gray Ghost Outdoor Productions Limited had any assets at the time of conversion of this case to Chapter 7, those assets were received as a result of fraudulent transfers from the Debtors to it, and that those assets properly belong to the Debtors and should have been disclosed in amended bankruptcy schedules and statement of affairs at the time of conversion of this case to Chapter 7.

19. On information and belief, the Trustee alleges that the Debtors have failed to cooperate with the Trustee by delivering to him financial information that is essential to administration of this case, including but not limited to documentation supporting the preparation of their tax returns, transactional documents to show the nature of the receipt and expenditure of large amounts of money immediately prior to and during their bankruptcy case, and other documents to evidence that what portion of the substantial receipts the Debtors have received has been used for personal expenses. Alternatively, the Debtors have failed to adequately keep and preserve or maintain necessary documentation from which the Debtors' financial condition and business transactions might be ascertained.

20. The Debtors' 2021 and 2022 tax returns indicate that the Debtors purchased small tools in the sums of $35,360 and $28,633, in those respective years. The Debtors valued their tools on their bankruptcy schedules at $12,000, but testified at their 341 meeting that the tools would probably appraise at $50,000-$60,000.

21.

22. On November 8, 2023, the Debtors filed a proposed amended plan, proposing to pay $1,300 per month for 14 months beginning in November 2023, $2,941 per month for 20 months beginning in January 2025, and $9,250 for one month beginning in September 2026. This plan was confirmed by the Court on November 30, 2023.

23. The vast majority of the payments received by the Chapter 13 bankruptcy case would have been applied to the Debtor's home mortgage. The unsecured creditors would receive little, if anything, as a result of the Debtors poor performance of the Chapter 13 plan. The Debtors could have easily paid substantially more to a Chapter 13 Trustee with distribution to unsecured creditors, had the Debtors not made purchases and payments to third parties as described above.

24. Debtor Andy Elliott filed a Chapter 13 bankruptcy filing in South Carolina on June 24, 2013. A bankruptcy case was eventually dismissed on January 23, 2015, as a result of the Debtor's failure to make payments on the Chapter 13 plan.

25. Debtor Andy Elliott filed a Chapter 13 plan in South Carolina on February 10, 2015. This bankruptcy case was eventually dismissed on June 9, 2015, for failure to comply with the requirements of Chapter 13.

26. Rather than make payments to their Chapter 13 plan, the Debtors transferred money to their children shortly before converting to a Chapter 7. On December 21, 2023, the Debtors transferred $1,100 to their daughter, and on December 26, the Debtors transferred $500 to their son.

The Debtors also transferred a GMC pickup to their daughter as a graduation gift, the title being transferred on or about January 10, 2024.

27. The Debtors purchased a 2020 Aero AETL ("Aero trailer") for $6,300 in November 2023 and did not disclose that purchase, nor did the Debtors schedule this as an asset in their amended bankruptcy schedules and statement of affairs.

28. On January 9, 2024, the day the Debtors converted their case to Chapter 7, the Debtors' First International Bank account had a balance of $40,785.

29. The Debtors had gross deposits of funds into the First International Bank account in November 2023 of $16,459, gross deposits of $16,430 in December 2023, and gross deposits of $48,546 in January 2024 prior to the conversion to Chapter 7 on January 9, 2024, with total deposits of $107,857 in January 2024.

30. On November 2, 2023, the Debtors withdrew $1,500, and on November 20 withdrew $5,000 cash from their First International Bank account. The Debtors has provided no explanation as to the disposition of that cash.

31. On February 1, 2024 the Chapter 13 standing trustee filed his final report and account, reporting that the Debtors paid a total of $11,029 into the Chapter 13 plan.

32. The bankruptcy court issued an order for turnover on April 26, 2024, as Docket # 129. This order for turnover requires the Debtors to turn over the following things:

1. Copies of the Debtors' 2023 federal and state tax returns;
2. ;
3. Copies of all of the working papers with the debtors' 2020, 2021, 2022, and 2023 tax returns, which the debtor relied on to report his income and expenses on his tax returns;
4. ;
5. ;
6. Copies of invoices for all tools purchased by the Debtor in 2023; and
7. .

The Debtors have not obeyed this Court's order, having failed to turnover these items. Alternatively, these items requested are documents which the Debtors should have received and retained to allow the estate and its creditors to ascertain the Debtors' financial condition or business transactions at the times relevant to this bankruptcy case.

## FIRST CLAIM —–CONVERSION
## TO CHAPTER 7 WAS IN BAD FAITH - 11 U.S.C. § 348(f)(2)

33. The Trustee re-alleges paragraphs 1 through 32. The Debtors' conversion to Chapter 7 should be determined to be in bad faith in that the Debtors had the means to make their Chapter 13 payments, but deliberately chose not to make Chapter 13 payments while purchasing various assets including luxury recreational items, including but not limited to guns, ammunition, travel, motor vehicles, trailers, tools, and other assets and transferring those assets.

34. Debtor Andy Elliott has filed a Chapter 13 bankruptcy case on two prior occasions and should be well aware of the requirements of the bankruptcy code to maintain adequate documentation which allows creditors to ascertain his financial condition and transactions.

35. Each of the three bankruptcy filings Andy Elliott, and Sandra Leah Elliott's participation in the most recent filing, were made with the specific intent of delaying and defrauding their creditors.

36. The Debtors failed to fairly describe their assets and transactions in the initial bankruptcy schedules and statement of affairs and subsequent amendments to those documents. These failings are false oaths.   Chapter

37. The Debtors' failure to make Chapter 13 payments under the plan was a deliberate plan by the Debtors to avoid their creditors when they could have made those payments, as evidenced by the facts regarding significant cash withdrawals, purchase of firearms, and other disposition of bonds on nonessential purchases or assets.

38. The Debtors abused the bankruptcy system by making false oaths in the form of inaccurate bankruptcy schedules and statement of affairs, false testimony at their 341 meeting, by failing to keep records from which the financial condition and transactions might be ascertained and repeated bankruptcy filings to discourage creditors from pursuing collection of the debts owed to them.

39. The Trustee alleges that conversion from Chapter 13 to Chapter 7 was in bad faith and, pursuant to 11 U.S.C. § 348(f)(2), the property of the bankruptcy estate in a converted case shall consist of the property of the estate as of the date of the conversion.

### SECOND CLAIM –– DENIAL OF DISCHARGE 11 U.S.C. § 727(a)(3)

40. The Trustee re-alleges paragraphs 1 through 39.

41. The Debtors have concealed, destroyed, or failed to keep or preserve any recorded information, including books, documents, records and papers from which the Debtors' financial condition or business transactions might be ascertained. The Debtors have not kept business records and have not provided business records to the Trustee reflecting income and expenses which could be used to ascertain Debtors' business condition and transactions. The Debtor claims he spent a significant amount of money on firearms and related goods, RV accessories, and other unknown assets acquired with cash, and did not keep any books, records, receipts, or documents from which their financial condition or business transactions might be ascertained. The Debtors' discharge should be denied pursuant to 11 U.S.C. § 727(a)(3).

### THIRD CLAIM –– DENIAL OF DISCHARGE 11 U.S.C. § 727(a)(4)

42. The Trustee re-alleges paragraphs 1 through 41.

43. The Debtors committed false oath by failing to disclose assets, including firearms and related goods, tools, corporate interests, accounts receivable, and other assets, and diverted funds which could have been used to fund Chapter 13 payments, and instead purchased other assets

which were not disclosed to the Trustee and/or transferred assets to third parties for no consideration. Debtors' discharge should be denied pursuant to 11 U.S.C. § 727(a)(4).

### FOURTH CLAIM —— DENIAL OF DISCHARGE 11 U.S.C. § 727(a)(2)(A)

44. The Trustee re-alleges paragraphs 1 through 43.

45. The Debtors, with intent to hinder, delay, or defraud a creditor or an officer of the bankruptcy estate, transferred property of the bankruptcy estate after the date of the bankruptcy filing by granting a second mortgage in their real estate, and transferring a motor vehicle to their daughter after the case was converted to a Chapter 7. The Debtors' discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A).

### FIFTH CLAIM —— DENIAL OF DISCHARGE 11 U.S.C. § 727(a)(6)

46. The Trustee re-alleges paragraphs 1 through 45.

47. The Debtors have not complied with the Court's order dated April 26, 2024, in that they have not provided copies of their 2023 tax return, working papers for the Debtors' 2020, 2021, 2022, and 2023 tax returns, and invoices for purchase of tools. Pursuant to 11 U.S.C. § 727(a)(6), the Debtors have refused to obey any lawful order of the court, and their discharges should be denied.

WHEREFORE, the Plaintiff requests the following relief from the Court:

1. Denial of the Debtors' discharge pursuant to 11 U.S.C. § 727(a)(2), (3), (4), and (6);

2. A finding of a bad faith conversion under 11 U.S.C. § 348(f)(2) and that all property of the Debtors and the bankruptcy estate existing at the time of the conversion of this case to Chapter 7, are property of this bankruptcy estate;

3. For the Plaintiff's costs and disbursements of this action; and,

4. For such other and further relief as the Court deems fair and just.

Dated: August 19, 2025 /s/ Kip M. Kaler
Kip M. Kaler (ND 03757)
Gene W. Doeling (ND 05078)
KD Law, PLLP
Attorneys for Plaintiff
PO Box 9231
Fargo, ND 58106-9231
(701) 232-8757

---

[i] The debt was transferred to Freedom Mortgage some time during the Chapter 13 case.