IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Andy Baron Elliott | ) | Case No. 21-30420 |
| | ) | (Chapter 7) |
| and | ) | |
| | ) | |
| Sandra Leah Elliott, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| Gene W. Doeling, in his Official Capacity as Chapter 7 Trustee, | ) | |
| | ) | |
| | ) | Adv. Case No. 24-07012 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Andy Baron Elliott | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Sandra Leah Elliott, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>Motion for Entry of a Protective Order</u>**

Come now Andy Baron Elliott ("Mr. Elliott") and Sandra Leah Elliott ("Ms. Elliott") (collectively, the "Debtors," and each a "Debtor"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26, and move this Honorable Court to enter an order protecting Ms. Elliott from the burden and expense of appearing for an in-person deposition in Fargo, North Dakota, and in support thereof state as follows:

1

I. **Introduction**

This is an action for denial of the Debtors' discharges, in which Gene Doeling (the "Trustee") also seeks a finding that this case was converted from chapter 13 in bad faith. The Trustee has pursued this matter in a palpably aggressive manner, issuing extensive discovery, propounding myriad third party subpoenas, and requiring Mr. Elliott to travel to Fargo, North Dakota for an in-person deposition despite Mr. Elliott (i) having filed the underlying bankruptcy case while resident in Mandan, North Dakota; and (ii) no longer being a domiciliary of the state. The Debtors have abided these exuberances, concerned about the enormous expense imposed by these actions yet equally resolved to demonstrate their lack of interest in concealment. As was perhaps inevitable, though, the Trustee has now sought more than can be properly described as reasonable, issuing a deposition notice that endeavors to compel the attendance of Ms. Elliott in Fargo (the "Deposition Notice"). *See* Deposition Notice, attached hereto as Exhibit A.

Two issues permeate the Deposition Notice. First, it is—quite genuinely—unclear what motivation underlies endeavoring to depose Ms. Elliott, whose role in this adversary proceeding is at-best tangential. While the Debtors are careful to not ascribe vexatious or harassing inclinations to the Trustee, context also well dictates that this litigation is centered on the disclosures and actions, *vel non*, of Mr. Elliott. Such at least lends a marginal inference to the notion that endeavoring to depose Mr. Elliott may be less aimed at an ongoing pursuit of objective facts and more aimed at utilizing the levers of an adversary proceeding to extract leverage. And, second, the manner in which Ms. Elliott's deposition has been noticed—in person, in a city far from where she resides and far from where she has historically resided—only compounds this problematic aura.

The Debtors genuinely do not believe it is appropriate for Ms, Elliott to be subjected to the traumas of deposition in a case where her putative involvement in alleged bad acts is at-best

2

marginal. More importantly, though, they also believe any effort to eschew the technology relied upon regularly in this Honorable Court, and command Ms. Elliott's presence in Fargo, in lieu of via written, telephonic or videographic deposition, invites only an undue burden and expense that ought not be permitted.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged a protective order be entered prohibiting—or, at minimum, limiting—the deposition of Ms. Elliott.

II.  **Standard**

Federal Rule of Civil Procedure 26—made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7026—openly contemplates the entry of protective orders:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;
>
> (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
>
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. . .

Fed. R. Civ. P. 26(c)(1).

III.  **Argument: Ms. Elliott's Deposition Should be Disallowed or Limited to an Alternate Medium**

Ms. Elliott is presently a resident of the State of Texas, having formerly resided in Manden, North Dakota at the time this bankruptcy case was commenced. She does not now live—and has not, at any time relevant, lived—within hours of Fargo, North Dakota. Yet the Trustee, having

3

already compelled Mr. Elliott to appear in Fargo for deposition (which Mr. Elliott did without protest or incident), insists upon hailing Ms. Elliott into Cass County for a deposition that shows no outward indicia of being anything more than a formalistic exercise of limited—if any—utility.

The allegations in the amended pleading in this case, and elaborated upon through the discovery process, generally concern Mr. Elliott's earning of money, and expenditures of funds, while in chapter 13. It is, quite sincerely, unclear what theory of a discharge denial is being meaningfully pursued against Ms. Elliott (excepting, perhaps, a theory that she signed schedules in which her husband's assets were allegedly not fully itemized). And it necessarily follows that while Mr. Elliott did not bemoan having to suffer the notable time and expense of traveling to Cass County for his deposition in this case (even though such could have been quite readily conducted via remote means), asking Ms. Elliott to suffer a similar fate is beyond the perceptive range of reasonableness.

If Ms. Elliott is to be deposed, while residing in Texas and while continuing to have no meaningful tie to Fargo, it would seem wholly logical for such to be accomplished via written, videographic or telephonic means. Indeed, such is expressly contemplated by controlling rule: "The parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4). *See also* Fed. R. Civ. P. 31 (providing for deposition by written questions).

As noted by one sister court, in analyzing the foregoing provision of Rule 30: "Since Rule 30(b)(4) does not specify the standards to be considered in determining whether to grant a request [for a remote] deposition . . . the decision to grant or deny such an application is left to the discretion of the Court, which must balance claims of prejudice and those of hardship . . . and conduct a careful weighing of the relevant facts." *Floodbreak LLC v. T. Moriarty & Son, Inc.*, 754

4

F. Supp. 3d 330, 332 (E.D.N.Y. 2024) (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 337 F.R.D. 575, 578 (S.D.N.Y. 2020)). *See also Patterson Dental Supply v. Pace*, 2020 U.S. Dist. LEXIS 256767, at *6 (D. Minn. Nov. 5, 2020) ("Courts have broad discretion in the handling of discovery issues and in crafting protective orders.") (citing *Hill v. Sw. Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017); *Bison Advisors, LLC v. Kessler*, 2015 U.S. Dist. LEXIS 96740, 2015 WL 4509158, *2 (D. Minn. July 24, 2015) (citing *Pavlik v. Cargil, Inc.*, 9 F.3d 710, 714 (8th Cir. 1993)); *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, 2018 U.S. Dist. LEXIS 230597, 2018 WL 9919939, at *4 (D. Minn. Jan. 23, 2018)).[1]

    Quite plainly, it is altogether unclear why Ms. Elliott must sit for a deposition, much less why she must expend significant resources traveling to Fargo for a deposition. Her testimony does not appear to be relevant to any facet of this case. And demanding she travel a great many miles, at notable personal expense, merely to answer questions about the authenticity of her signature on various documents and her husband's income and expenses, borders on ironic cruelty in the prism of a bankruptcy case premised upon a lack of monetary resources.

    The Trustee could very easily proceed without Ms. Elliott's deposition. The Trustee could, equally, depose Ms. Elliott by written questions. *See* Fed. R. Civ. P. 31. And if there is absolutely a need for the Trustee to depose Ms. Elliott through oral examination, such can assuredly be accomplished by telephonic or videographic means. Yet the Trustee, for whatever reason, flatly refuses such, instead commanding Ms. Elliott to personally appear in a city nowhere near her current residence and far-from-convenient to her prior residence too.

---

[1] It not being apparent if there exists a Westlaw citation for this case, a copy is attached hereto as Exhibit B.

**IV.     Rule 26(c)(1) Certification**

By signing this motion, I hereby certify that on Tuesday, September 23, 2025, I conferred with Kip Kaler, counsel for the Trustee in this action, concerning the desire for Ms. Elliott to either not be deposed or to be deposed via remote means. The conference occurred telephonically at approximately 11:15 am prevailing central time, lasting for approximately 9 minutes. We were unable to reach an agreement at that time and the Trustee shortly thereafter noticed Ms. Elliott's deposition, with my indicating—contemporaneously—that she would not appear for deposition and would instead seek a protective order, with the contemporaneous acknowledgement being aimed at ensuring expenses not be incurred in reserving a court reporter for the deposition date.

I additionally note that neither the cost of counsel traveling to Fargo, nor the "short" notice of the deposition, inform this motion. My firm does not charge for travel to Fargo, with my colleague and I both being regularly in the region (in fact, I was physically in Fargo, by coincidence, during the good faith conference). And while the Deposition Notice lends the inference of a deposition being scheduled on only a few days' notice, Mr. Kaler had previously commenced efforts to schedule the deposition and was clearly *not* trying to ambush the Debtors with a last-minute notice.

**V.     Conclusion**

WHEREFORE, the Debtors respectfully pray this Honorable Court (i) enter an order forbidding the Trustee from taking the deposition of Ms. Elliott; (ii) in the alternative, direct that the deposition of Ms. Elliott be taken only by written questions; (iii) in the alternative, direct the deposition of Ms. Elliott proceed only via videographic or telephonic means; and (iv) afford such other and further relief as may be just and proper.

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Dated: September 25, 2025   By: | /s/ Maurice B. VerStandig<br>Maurice B. VerStandig, Esq.<br>The Dakota Bankruptcy Firm<br>1630 1st Avenue N<br>Suite B PMB 24<br>Fargo, North Dakota 58102-4246<br>Phone: (701) 394-3215<br>mac@dakotabankruptcy.com<br>*Counsel for the Defendants* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of September, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

7