**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| In re: | ) | Bky. Case No. 21-30420 |
| | ) | Chapter 7 |
| Andy Baron Elliott, | ) | |
| Sandra Leah Elliott, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| Gene W. Doeling as Bankruptcy Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | **AFFIDAVIT OF KIP M. KALER** |
| | ) | |
| v. | ) | |
| | ) | |
| Andy Baron Elliott, | ) | |
| Sandra Leah Elliott, | ) | Adversary No. 24-07012 |
| | ) | |
| Defendants. | ) | |

Kip M. Kaler, being first duly sworn deposes and says:

[1]    I am the attorney employed by the bankruptcy estate to represent the trustee in this matter.

[2]    Attached hereto as <u>Exhibit 1</u> is a true and correct copy of Interrogatories and Requests for Production of Documents dated March 21, 2025.

[3]    Attached hereto as <u>Exhibit 2</u> is a true and correct copy of Defendants' Responses, Objections and Answers to Interrogatories and Requests for Production dated May 1, 2025.

[4]    Attached hereto as <u>Exhibit 3</u> is a true and correct copy of the letter dated May 21, 2025 by the Plaintiff/Trustee's attorney outlining the issues with the Defendants' Discovery Responses.

[5]    Attached hereto as <u>Exhibit 4</u> is a true and correct copy of the Plaintiff's Interrogatories and Request for Production of Documents (Set #2) dated June 26, 2025.

[6]    Attached hereto as <u>Exhibit 5</u> is a true and correct copy of Defendants' Responses, Objections and Answers to Second Interrogatories and Requests for Production dated July 28, 2025.

[7]   Attached hereto as Exhibit 6 is a true and correct copy of the letter dated August 14, 2025 by the Plaintiff/Trustee's attorney outlining the continued issues with the Defendants' Discovery Responses.

[8]   Defendants have, since each of their Responses, provided additional documents but no formal response nor any identification of the Responses to which the documents relate.

[9]   Attached as Exhibit 7, is 4 pages of documents received from the Defendants' attorneys on September 26, 2025.  I understood this document to be the Defendants' business clients and the invoices issued to them, for each respective year.

[10]   Attached as Exhibit 8, is the contract between Andy Elliott and M&J Transport, LLC (Jesse Holt) for the purchase of the 2014 Heartland trailer (RV).  I received this from Mellissa Holt, on behalf of M&J Transport.  This is the RV the Trustee repeatedly had asked the debtors to provide information for.  Also attached is the amortization schedule for the purchase.  Of particular note is the fact debtors made a $5,000 payment on this RV on January 1, 2024.

     FURTHER AFFIANT SAYETH NOT.

Dated: October 17, 2025.

Kip M. Kaler (ND Atty # 03757)
KD Law, PLLP
Attorney for Trustee
3429 Interstate Blvd. S.
Fargo, ND 58103
701-232-8757
kip@kdlawpartners.com

Subscribed and sworn to before me this 17th day of October, 2025.

HEATHER CHRIST
Notary Public
State of North Dakota
My Commission Expires January 7, 2028

Notary Public, Cass County

# AFFIDAVIT OF KIP M. KALER
# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| In re: | ) | Bky. Case No.: 21-30420 |
| | ) | Chapter 7 |
| Andy Baron Elliott, | ) | |
| Sandra Leah Elliott, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | **PLAINTIFF'S INTERROGATORIES** |
| Gene W. Doeling as Bankruptcy Trustee, | ) | **AND REQUESTS FOR PRODUCTION** |
| | ) | **OF DOCUMENTS** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Andy Baron Elliott, | ) | |
| Sandra Leah Elliott, | ) | |
| | ) | |
| Defendants. | ) | Adversary No. 24-07012 |
| _____ | ) | |

TO:    Defendant Andy Baron Elliott:

PLEASE TAKE NOTICE that the Plaintiff requires the Defendant, Andy Baron Elliott to

answer the following Interrogatories pursuant to Rule 33 of the Federal Rules of Civil Procedure

under oath within 30 days after service hereof.

<u>DEFINITIONS OF TERMS EMPLOYED IN THESE INTERROGATORIES AND
REQUEST FOR PRODUCTION OF DOCUMENTS</u>

A. A word or phrase underscored in any interrogatory or the accompanying request for
production of documents indicates that the word or phrase is a term below.

(i)      "<u>You</u>", "<u>Your</u>", or "<u>Yourself</u>", refers to the defendant, its attorneys,
accountants, employees, agents, and all persons or entities acting or
purporting to act on its behalf.

(ii)      The term "<u>identity</u>", "<u>identification</u>" and "<u>identify</u>":

(a)      When used with reference to a natural person means to state
his/her full name and last known business and residence
address, the position and business affiliation of such person
at the time in question, and the <u>identity</u> of the party or other
person on whose behalf such person acted at said time;

(b)     When used with reference to any firm, partnership, corporation or other association, or any division, department or unit thereof, means to state its full name, principal office address, all business affiliations relating to the subject to the interrogatory, and the <u>identity</u> of the party or other person on whose behalf such association acted at the time in question.

(c)     When used with reference to a document, means to state the date and author (and, if different, the signer), the addressee, type of document (e.g., letter, memorandum, chart), a summary of its contents, and the present or last known location and custodian and to attach a copy of the document to the answer to the interrogatory.  If any such document was, but is no longer, in your possession or subject to your control, state the disposition which was made of it, the reason for such disposition and the date thereof;

(d)     When used with reference to any act, event, circumstance, communication, representation, conversation, meeting, transaction, occasion or other occurrence, means to state that which occurred, the date, time, place and identity of all persons present, that which each such person said, did and/or significantly failed to say or do, the approximate duration of such occurrence, the method or methods of communication employed, the identity of all persons having knowledge of such occurrence as well as the date and means when and whereby such knowledge was first acquired.

(iii)     The term "<u>document</u>" means the original and all copies regardless of original or location of any contracts, agreements, communications, correspondence, letters, telegrams, memoranda, records, reports, books, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, forecasts, schedules, statistical statements, work papers, graphs, charts, accounts, analytical records, minutes or records of meetings or conferences, consultants' reports, appraisals, records, reports or summaries of negotiations, brochures, notes, marginal notations, bills, invoices, checks, drafts, photographs, lists, journals, advertising, magnetic tapes, computer tapes, discs, and cards, printouts and all other written, printed, stenographic, recorded, photographic matter, or sound reproductions, and all drafts and copies of all of the foregoing, however produced, or reproduced, which may be in your possession, custody, or control. In answering any interrogatory using the term "<u>document</u>" specify whether the document to which reference is made in your answer is the original or a copy.

(iv)     The term "<u>communicate</u>" or "<u>communication</u>" means and refers to any meeting, conversation, discussion, correspondence, message or other occurrence whereby thoughts, opinions, or data are transmitted between two or more persons.

(v)     The term "<u>person</u>" or "<u>persons</u>" includes not only natural persons but also firms, partnerships, corporations and associations as well as all divisions, departments or other units thereof.

B.  Where appropriate, the use of the singular includes the plural and the use of the plural includes the singular.

C.  These interrogatories are continuing and, to the extent that your answers may be enlarged, diminished, or otherwise modified by information acquired by you after the filing of your answers hereto, you are promptly to serve and file supplemental answers reflecting all such subsequently acquired information.

D.  If you contend that any communication of document sought by these interrogatories is subject to any privilege, state the general subject matter of communication of document, the date the information or document was transmitted or prepared, each person having knowledge of the communication or document (and, in the case of a document, its author, signer and each person to whom a copy was directed), and the nature of the privilege.

## **INTERROGATORIES**

1.     <u>Identify</u> each and every <u>person</u> supplying information or assisting in the preparation of the answers to these Interrogatories.  As to each such <u>person</u> state:

a.     name;
b.     address;
c.     occupation;
d.     current employment;
e.     rank of status with current employer.

2.     <u>Identify</u> each and every <u>person</u> <u>you</u> believe has knowledge or information relating to the subject matter of this lawsuit.  As to each such <u>person</u> state:

a.     name;
b.     address;
c.     occupation;

3.     Describe in detail all transfers of money or property <u>you</u> made to <u>your</u> children from September 28, 2020 to the present date.  For each transfer, state the date, amount or value, recipient, purpose of the transfer, and source of funds or property transferred.

4.     Describe in detail, and not in summary fashion, how <u>you</u> spent or otherwise used the $1,500 that <u>you</u> withdrew from First International Bank on November 2, 2023.

5.      Describe in detail, and not in summary fashion, how you spent or otherwise used the $5,000 that you withdrew from First International Bank on November 20, 2023.

6.      Provide a complete and detailed list of all tools you owned as of September 28, 2021, including the make, model, purchase date, and purchase price of each tool.

7.      Identify all tools you purchased during the calendar year 2021, including the make, model, purchase date, and purchase price of each tool, and explain how you arrived at the valuation of $35,360 on those tools, as claimed in your 2021 tax returns.

8.      Identify all tools you purchased during the calendar year 2022, including the make, model, purchase date, and purchase price of each tool, and explain how you arrived at the valuation of $28,633 on those tools, as claimed in your 2022 tax returns.

9.      Identify all tools you purchased during the calendar year 2023, including the make, model, purchase date, and purchase price of each tool.

10.     Explain how you arrived at the valuation of $12,000 for your tools, as listed in your amended Schedule B filed on June 7, 2024.

11.     Describe in detail, and not in summary fashion, the circumstances surrounding the $73,445.96 HUD loan taken out in February 2024, including the purpose of the loan, how the funds were used, and why you believed it was necessary or appropriate to take out this loan after converting your bankruptcy case to Chapter 7.

12.     State your gross business receipts for each month from January 2021 to the present. Provide a detailed explanation for any significant increases or decreases in monthly receipts during this period.

13.     Identify all purchases you made at hunting, camping or sporting goods stores between September 28, 2021 and January 9, 2024. For each purchase, state the date, amount, items purchased, and source of funds used for the purchase along with the current location of each item purchased. Your response should include, but not be limited to, the following purchases:

   a)  June 8, 2023 purchase at Big Boy's Toys in Watford City, ND for $1,384;
   b)  July 12, 2023 purchase at Spartan Firearms in Minot, ND for $245;
   c)  October 10, 2023 purchase at Rack Jack Stand for $174.24;
   d)  October 19, 2023 purchase at Lundemo Firearms, Sydney, MT for $1,883.70;
   e)  October 27, 2023 purchase at Lundemo Firearms for $1,150.87;
   f)  November 1, 2023 purchase at Scenic Sports, Williston, ND for $442.77;
   g)  November 3, 2023 purchase at Lundemo Firearms for $425.13;
   h)  December 13, 2023 purchase at Scenic Sports for $385.50;
   i)  January 8, 2024 purchase at Sportsman's Warehouse, Williston, ND for $601.46; and
   j)  January 9, 2024 purchase at Lundemo Firearms for $1,393.06.

14.     Identify all purchases you made of RV accessories from RV and RV accessory stores between September 28, 2021 and January 9, 2024.  For each purchase, state the date, amount, items purchased, and source of funds used for the purchase and current location of the items purchased.  Your response should include, but not be limited to, the following purchases:

a) July 7, 2023 purchase at Rugby Homes and RV for $429.48;
b) July 10, 2023 purchase at Rough Rider RV for $1,322.73;
c) July 11, 2023 purchase at Capital RV of Minot for $682.57;
d) July 28, 2023 purchase at Rough Rider RV for $323.65;
e) July 31, 2023 purchase at Amunrud's RV in Sydney, MT for $326.85;
f) August 7, 2023 purchase at RV Upgrades for $787.54;
g) November 8, 2023 purchase at Big Rig Friendly for $884.70;
h) December 4, 2024 purchase at Big Rig Friendly for $928.88; and
i) January 2, 2024 purchase at Big Rig Friendly for $947.80.

15.     Provide details about the 2020 Aero AETL trailer purchased in November 2023, including the purchase price, source of funds for the purchase, current location and owner of the trailer, and explain why this purchase was not disclosed in your bankruptcy filings.

16.     Identify the name, address and telephone number of the owner of the fifth wheel camper and the year, make and model of the camper that you testified to using during your trips to South Carolina, as identified during your 341 Meeting.

17.     Identify any agreements you had with the owner of the above-described fifth wheel camper relating to your use of the same.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## **REQUEST FOR PRODUCTION OF DOCUMENTS**

TO:  Andy Baron Elliott

PLEASE TAKE NOTICE that Gene W. Doeling, attorney for the Plaintiff in the above proceeding requires the Defendant, Andy Baron Elliott to produce or permit the attorney for the Plaintiff to inspect and copy all designated documents described herein pursuant to Rule 34 of the Federal Rules of Civil Procedure within 30 days after service hereof.  Further, you are required to produce such documents for inspection as they are kept in the usual course of business or shall organize and label them to correspond with the categories contained in this request.   These documents should be produced at the office of Kaler Doeling, PLLP, 3429 Interstate Blvd. S., Fargo, North Dakota 58106 by 5:00 p.m. on April 21, 2025.  In lieu thereof you may provide copies of such documents within the time prescribed.

1.       Produce all documents, communications, and things identified or described in your answers to these Interrogatories.

2.       Produce all documents, communications, and things you referred to or utilized in answering these Interrogatories.

3.       Produce complete copies of your 2023 state and federal tax returns, including all schedules and attachments in support of those returns.

4.       Produce complete copies of all of working papers for your 2020, 2021, 2022, and 2023 state and federal tax returns which you relied upon to report income and expenses for those tax returns.

5.       Produce copies of all quotes and estimates for work you performed for your business for which you were paid for the period of June 1, 2023 to the current date.

6.       Produce all invoices for work you performed for the months of February through April of 2024.

7.       Produce all documentation evidencing the source of all deposits into your First International Bank account ending in 3588 occurring in the month of January, 2024.

8.       Produce all documents relating to purchases of tools you made in 2021, including, but not limited to, receipts, invoices, and credit card statements.

9.      Produce all <u>documents</u> relating to purchases of tools <u>you</u> made in 2022, including, but not limited to, receipts, invoices, and credit card statements.

10.     Produce all <u>documents</u> relating to purchases of tools <u>you</u> made in 2023, including, but not limited to, receipts, invoices, and credit card statements.

11.     Produce all documents relating to purchases <u>you</u> made at sporting goods stores September 28, 2021 to the present, including, but not limited to, receipts, invoices, and credit card statements.  <u>Your</u> response should include, but not be limited to, the following purchases:

    a) June 8, 2023 purchase at Big Boy's Toys in Watford City, ND for $1,384
    b) July 12, 2023 purchase at Spartan Firearms in Minot, ND for $245;
    c) October 10, 2023 purchase at Rack Jack Stand for $174.24;
    d) October 19, 2023 purchase at Lundemo Firearms, Sydney, MT for $1,883.70;
    e) October 27, 2023 purchase at Lundemo Firearms for $1,150.87;
    f) November 1, 2023 purchase at Scenic Sports, Williston, ND for $442.77;
    g) November 3, 2023 purchase at Lundemo Firearms for $425.13;
    h) December 13, 2023 purchase at Scenic Sports for $385.50;
    i) January 8, 2024 purchase at Sportsman's Warehouse, Williston, ND for $601.46; and
    j) January 9, 2024 purchase at Lundemo Firearms for $1,393.06.

12.     Produce all <u>documents</u> relating to purchases <u>you</u> made of RV accessories from RV and RV accessory stores between September 28, 2021 and January 9, 2024, including, but not limited to, receipts, invoices, and credit card statements.  <u>Your</u> response should specifically include, but not be limited to, the following transactions:

    a) July 7, 2023 purchase at Rugby Homes and RV for $429.48;
    b) July 10, 2023 purchase at Rough Rider RV for $1,322.73;
    c) July 11, 2023 purchase at Capital RV of Minot for $682.57;
    d) July 28, 2023 purchase at Rough Rider RV for $323.65;
    e) July 31, 2023 purchase at Amunrud's RV in Sydney, MT for $326.85;
    f) August 7, 2023 purchase at RV Upgrades for $787.54;
    g) November 8, 2023 purchase at Big Rig Friendly for $884.70;
    h) December 4, 2024 purchase at Big Rig Friendly for $928.88; and
    i) January 2, 2024 purchase at Big Rig Friendly for $947.80.

13.     Produce all <u>documents</u> relating to the purchase of the 2020 Aero AETL trailer in November 2023, including, but not limited to, the bill of sale, title, registration, and proof of payment.

14.     Produce all <u>documents</u> <u>you</u> relied upon in preparing <u>your</u> bankruptcy schedules and Statement of Financial Affairs in both <u>your</u> Chapter 13 and Chapter 7 cases.

15.     Produce any <u>documents</u> evidencing payments made on <u>your</u> mortgage(s) during the pendency of <u>your</u> Chapter 13 bankruptcy.

16.     Produce all <u>documents</u> relating to the $73,445.96 HUD loan obtained in February 2024, including, but not limited to, the loan application, approval <u>documents</u>, and records of how the loan proceeds were used.

17.     Produce all <u>documents</u> relating to tools purchased by <u>you</u> from September 28, 2021 to the present, including, but not limited to, receipts, invoices, credit card statements, and any appraisals or valuations of said tools.

18.     Produce all <u>communications</u> between <u>you</u> and any financial institutions regarding loans, mortgages, or other financial transactions from September 28, 2021 to the present.

19.     Produce all <u>documents</u> relating to any vehicles owned, leased, or regularly used by <u>you</u> from September 28, 2021 to the present, including, but not limited to, titles, registration <u>documents</u>, loan <u>documents</u>, and insurance policies.

20.     Produce all <u>documents</u> evidencing all transfers of money or property made to <u>your</u> children between September 28, 2020 and the present date.

21.     Produce all <u>communications</u> with <u>your</u> daughter regarding the 2004 GMC Pickup <u>you</u> transferred in January of 2024.

Dated this 21st day of March, 2025.

Gene W. Doeling (ND Atty. No. 05078)
Asa K. Burck (ND Atty. No. 07251)
KD LAW, PLLP
Attorneys for Plaintiff
3429 Interstate Blvd. S.
P.O. Box 9231
Fargo, ND 58106-9231
(701) 232-8757
gene@kdlawpartners.com
asa@kdlawpartners.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| In re: | ) | Bky. Case No.: 21-30420 |
| | ) | Chapter 7 |
| Andy Baron Elliott, | ) | |
| Sandra Leah Elliott, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| Gene W. Doeling as Bankruptcy Trustee, | ) | **AFFIDAVIT OF SERVICE** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Andy Baron Elliott, | ) | |
| Sandra Leah Elliott, | ) | |
| | ) | |
| Defendants. | ) | Adversary No. 24-07012 |
| _____ | ) | |

  I, Heather Christ, being first duly sworn and under oath, depose and say:  I am of legal age, a citizen of the United States and not a party to the action herein; that on the 21st day of March, 2025, I served the following documents:

**PLAINTIFF'S INTERROGATORIES AND**
**REQUESTS FOR PRODUCTION OF DOCUMENTS**

on the persons listed below by placing a true and correct copy of said documents in an envelope addressed as follows:

> Maurice B. VerStandig
> The Dakota Bankruptcy Firm
> 1630 1st Avenue N
> Suite B PMB 24
> Fargo, North Dakota 58102-4246
> mac@dakotabankruptcy.com

and deposited same, with postage fully prepaid thereon, in the United States mails at Fargo, North Dakota, for delivery by the United States Post Office Department as directed on the envelope; that there is regular mail service between the place of mailing and the address as directed on the envelope.

_____
Heather Christ

Subscribed and sworn to before me this 21st day of March, 2025.

_____
NOTARY PUBLIC
Cass County, North Dakota

CHARITY GRUENEICH
Notary Public
State of North Dakota
My Commission Expires Oct. 22, 2026

# AFFIDAVIT OF KIP M. KALER
# EXHIBIT 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Andy Baron Elliott | ) | Case No. 21-30420 |
| | ) | (Chapter 7) |
| and | ) | |
| | ) | |
| | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| Gene W. Doeling, in his Official Capacity | ) | |
| as Chapter 7 Trustee, | ) | |
| | ) | Adv. Case No. 24-07012 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Andy Baron Elliott, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**RESPONSES, OBJECTIONS AND ANSWERS TO
INTERROGATORIES AND REQUESTS FOR PRODUCTION**

Comes now Andy Baron Elliott ("Mr. Elliott"), by and through undersigned counsel,

pursuant to Federal Rules of Civil Procedure 33 and 34, and in response, objection, and answer to

the interrogatories (the "Interrogatories," and each an "Interrogatory") and requests for production

(the "Requests," and each a "Request") of Gene W. Doeling in his capacity as trustee of Mr.

Elliott's bankruptcy estate (the "Trustee") states as follows:

***Interrogatories***

Interrogatory 1.        Identify each and every person supplying information or assisting in

the preparation of the answers to these Interrogatories. As to each such person state:

Docusign Envelope ID: 724F5A844-9A0E-4C9E-A0FF-48E626240D48

a. name;
b. address;
c. occupation;
d. current employment;
e. rank of status with current employer.

Objection:            Mr. Elliot objects to this Interrogatory to the extent it seeks

information protected by the attorney/client privilege and/or the attorney work product doctrine.

Specifically, to the extent Mr. Elliot has been assisted by counsel in answering these

Interrogatories, the details of such are privileged and outside the permissible scope of discovery.

Answer:            Name: Andy Elliott
                  Address: 1408 West Pheasant Ridge Dr.
                  Occupation: Self-Employed

Interrogatory 2.      Identify each and every person you believe has knowledge or

information relating to the subject matter of this lawsuit. As to each such person state:

a. name;
b. address;
c. occupation;

Objection:            Mr. Elliot objects to this Interrogatory to the extent it seeks

information protected by the attorney/client privilege and/or the attorney work product doctrine.

Specifically, to the extent Mr. Elliot has imbued in his counsel knowledge of this case, such would

be both responsive to this Interrogatory and yet well outside the permissible scope of discovery.

Answer:            Name: Andy Elliott

Address: 1408 West Pheasant Ridge Dr.
Occupation: Self-Employed

Name: Sandra Elliott
Address: 1408 West Pheasant Ridge Dr.

Interrogatory 3.         Describe in detail all transfers of money or property you made to your children from September 28, 2020, to the present date. For each transfer, state the date, amount or value, recipient, purpose of the transfer, and source of funds or property transferred

Objection:         Mr. Elliot objects to this Interrogatory on the basis that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Interrogatory seeks information about *all* transfers of property from Mr. Elliot to his children, without any limiting language that touches upon the size of transactions. As written, and solely for anecdotal purposes, this Interrogatory would require Mr. Elliot to recite every time he has handed his child any foodstuff or beverage.

Answer:         Subject to, and without waiving, the foregoing objection, Mr. Elliot answers as follows: Between September 28, 2020, and the present, I have made occasional transfers of money and personal property to my children. These transfers were customary gifts given for birthdays, Christmas, and graduations. The source of funds for any monetary gifts was my personal bank account and income. The amounts involved were nominal, and I do not presently recall specific dates, amounts, recipients, or itemized descriptions of the property transferred.

Docusign Envelope ID: 724F4844-9A0E-4C9F-A0FF-48E6262A0D48

Interrogatory 4.        Describe in detail, and not in summary fashion, how you spent or otherwise used the $1,500 that you withdrew from First International Bank on November 2, 2023.

Answer:        The $1,500.00 withdrawn from First International Bank on November 2, 2023, was retained as cash to be used as needed for travel expenses related to work, particularly in situations where my business or personal debit/credit cards did not function properly or were declined. The funds were not earmarked for a specific purchase at the time of withdrawal but were intended to serve as a readily available backup for incidental expenses. I do not have a detailed record of each expenditure made from these funds.

Interrogatory 5.        Describe in detail, and not in summary fashion, how you spent or otherwise used the $5,000 that you withdrew from First International Bank on November 20, 2023.

Answer:          The $5,000.00 withdrawn from First International Bank on November 20, 2023, was retained as cash to be used as needed for travel expenses related to work, particularly in situations where my business or personal debit/credit cards did not function properly or were declined. The funds were not earmarked for a specific purchase at the time of withdrawal but were intended to serve as a readily available backup for incidental expenses. I do not have a detailed record of each expenditure made from these funds.

Interrogatory 6.        Provide a complete and detailed list of all tools you owned as of September 28, 2021, including the make, model, purchase date, and purchase price of each tool.

Docusign Envelope ID: 724F5A844-9A0E-4C9E-A0FF-48E626240D48

Answer:            As of September 28, 2021, I owned various tools used in the course of my work. However, I do not have an itemized list or detailed record identifying the make, model, purchase date, or purchase price of each tool. The tools were acquired over time on an as-needed basis, and no formal inventory was maintained.

Interrogatory 7.        Identify all tools you purchased during the calendar year 2021, including the make, model, purchase date, and purchase price of each tool, and explain how you arrived at the valuation of $35,360 on those tools, as claimed in your 2021 tax returns.

Answer:            I do not maintain receipts for tools purchased in 2021, as they were bought on an as-needed basis for work purposes. I am therefore unable to provide a complete list of make model, purchase date, or purchase price for each individual tool. The valuation of $35,360 reported on my 2021 tax returns was prepared by my tax preparer based on a review of my bank statements and financial records. I did not independently calculate or verify that figure, and I relied on the preparer's expertise in reporting the information for tax purposes.

Interrogatory 8.        Identify all tools you purchased during the calendar year 2022, including the make, model, purchase date, and purchase price of each tool, and explain how you arrived at the valuation of $28,633 on those tools, as claimed in your 2022 tax returns.

Answer:            I do not maintain receipts for tools purchased in 2022, as they were bought on an as-needed basis for work purposes. I am, therefore, unable to provide a complete list of make, model, purchase date, or purchase price for each individual tool. The valuation of $28,633

reported on my 2022 tax returns was prepared by my tax preparer based on a review of my bank statements and financial records. I did not independently calculate or verify that figure, and I relied on the preparer's expertise in reporting the information for tax purposes.

Interrogatory 9.    Identify all tools you purchased during the calendar year 2023, including the make, model, purchase date, and purchase price of each tool.

Answer:    I do not maintain detailed receipts or records for tools purchased in 2023, as they were acquired on an as-needed basis for work purposes. As such, I am unable to provide a complete list of the make, model, purchase date, or purchase price for each individual tool. If I am able to locate additional documentation or recall specific purchases, I will supplement this response accordingly.

Interrogatory 10.    Explain how you arrived at the valuation of $12,000 for your tools, as listed in your amended Schedule B filed on June 7, 2024.

Answer:    The $12,000.00 valuation listed for tools on my amended Schedule B filed on June 7, 2024, represents my good faith estimate for the current value of the tools I presently possess. I did not use a formal appraisal method. The estimate accounts for depreciation, as tools typically decrease in value to less than half of their original purchase price over time. The figure also reflects what I believe remained in my possession following a consolidation and review of my equipment.

Interrogatory 11.    Describe in detail, and not in summary fashion, the circumstances surrounding the $73,445.96 HUD loan taken out in February 2024, including the purpose of the loan, how the funds were used, and why you believed it was necessary or appropriate to take out this loan after converting your bankruptcy case to Chapter 7.

Answer:    In February 2024, a $73,445.96 HUD loan was initiated by Freedom Mortgage to address the arrears on my mortgage loan. The funds were not transferred directly to me; rather, they were applied internally by Freedom Mortgage to bring my mortgage loan current. This loss mitigation option was offered by the mortgage company as part of their in-house servicing process to cure the delinquency on the loan. I agreed to the loan because I believe it was necessary to avoid foreclosure and preserve my home, and it appeared to be the only viable option presented by the lender at the time. I was not advised that accepting the loan would conflict with my pending Chapter 7 case, and I did not view it as taking on new unsecured debt, since the loan was fully secured by the property and applied directly toward existing mortgage arrears.

Interrogatory 12.    State your gross business receipts for each month from January 2021 to the present. Provide a detailed explanation for any significant increases or decreases in monthly receipts during this period.

Answer:    I do not have precise, itemized breakdown of gross business receipts by month from January 2021 to the present readily available at this time. As a self-employed individual, my income fluctuates due to the nature of the work. There is no consistent pattern or predictable trends, and I cannot control the inflow or reduction of work from day-to-day, month-

to-month, or year-to-year. These fluctuations are driven by client demand, seasonal factors, and general market conditions.

Interrogatory 13.    Identify all purchases you made at hunting, camping or sporting goods stores between September 28, 2021, and January 9, 2024. For each purchase, state the date, amount, items purchased, and source of funds used for the purchase along with the current location of each item purchased. Your response should include, but not be limited to, the following purchases:

a) June 8, 2023 purchase at Big Boy's Toys in Watford City, ND for $1 ,384;
b) July 12, 2023 purchase at Spartan Firearms in Minot, ND for $245;
c) October 10, 2023 purchase at Rack Jack Stand for $174.24;
d) October 19, 2023 purchase at Lundemo Firearms, Sydney, MT for $1 ,883.70;
e) October 27, 2023 purchase at Lundemo Firearms for $1,150.87;
f) November 1, 2023 purchase at Scenic Sports, Williston, ND for $442.77;
g) November 3, 2023 purchase at Lundemo Firearms for $425.13;
h) December 13, 2023 purchase at Scenic Sports for $385.50;
i) January 8, 2024 purchase at Sportsman's Warehouse, Williston, ND for $601.46; and
j) January 9, 2024 purchase at Lundemo Firearms for $1,393.06.

Answer:            Between September 28, 2021, and January 9, 2024, I made various purchases at hunting, camping, and sporting goods stores, including those listed below. The purchases were generally for reloading materials, firearm-related supplies, camping accessories, and outdoor sporting goods. I do not specifically recall the exact items purchased in each transaction; however, based on the store types and may generally practice, the items likely included gunpowder, lead, brass casings, reloading equipment, ammunition, camping tools, archery accessories, and other outdoor utility items. The source of funds for these purchases was my

personal and/or business income. Items purchased were either used, installed, remain in my possession, or have since been disposed of in the ordinary course of use. Known purchases include:

a.  June 8, 2023 purchase at Big Boy's Toys in Watford City, ND for $1,384;
b.  July 12, 2023 purchase at Spartan Firearms in Minot, ND for $245;
c.  October 10, 2023 purchase at Rack Jack Stand for $174.24;
d.  October 19, 2023 purchase at Lundemo Firearms, Sydney, MT for $1,883.70;
e.  October 27, 2023 purchase at Lundemo Firearms for $1,150.87;
f.  November 1, 2023 purchase at Scenic Sports, Williston, ND for $442.77;
g.  November 2, 2023 purchase at High Caliber, Sidney MT for $147.97
h.  November 2, 2023 purchase at Rack Jack Stand for $288.49
i.  November 3, 2023 purchase at Lundemo Firearms for $425.13;
j.  November 10, 2023 purchase at Camping World for $67.08
k.  November 16, 2023 purchase at Sportsman's Warehouse, Williston, ND for $85.76
l.  November 20, 2023 purchase at Flex-Fletch Prod for $36.99
m.  November 20, 2023 purchase at Dead on Archery for $74.94
n.  November 20,2023 purchase at Sportsman's Warehouse, Williston, ND for $129.05
o.  November 20, 2023 purchase at Sportsman's Warehouse, Williston, ND for $161.99
p.  November 20, 2023 purchase at Sportsman's Warehouse, Williston, ND for $225.99
q.  November 22, 2023 purchase at Runnings of Dick, Dickinson ND for $236.39
r.  November 24, 2023 purchase at Sportsman's Warehouse, Willinson, ND for $102.59
s.  November 24, 2023 purchase at Sportsman's Wearhouse, Willison, ND for $117.57
t.  November 27, 2023 purchase for GritrSports for $101.81
u.  November 27, 2023 purchase for Scenic Sports, Williston ND for $168.32
v.  December 7, 2023 purchase at Sportsman's Warehouse, Williston, ND for $117.69
w.  December 11, 2023 purchase at Go Outdoors Scout for $80.00
x.  December 13, 2023 purchase at Scenic Sports for $385.50;
y.  January 8, 2024 purchase at Flex-Fletch Pro for $24.99
z.  January 8, 2024 purchase at Flex-Fletch Pro for $72.88
aa.  January 8, 2024 purchase at Scenic Sports, Williston, ND for $134.41
bb.  January 8, 2024 purchase at Sportsman's Warehouse, Williston, ND for $601.46;
cc.  January 9, 2024 purchase at SP Bow Crew for $156.96
dd.  January 9, 2024 at High Caliber for $274.62
ee.  January 9, 2024 purchase at Lundemo Firearms for $1,393.06.
ff.  January 11, 2024 purchase at Sportsman's Warehouse, Willinston, ND for $160.63
gg.  January 17, 2024 purchase at Sportsman's Warehouse, Willinston, ND for $254.33
hh.  January 22, 2024 purchase at Quality Archery for $89.42
ii.  January 29, 2024 purchase at Sportsman's Warehouse for $225.86
jj.  January 29, 2024 purchase at Scenic Sports, Williston, ND for $1,436.37

Interrogatory 14.        Identify all purchases you made of RV accessories from RV and RV accessory stores between September 28, 2021 and January 9, 2024. For each purchase, state the date, amount, items purchased, and source of funds used for the purchase and current location of the items purchased. Your response should include, but not be limited to, the following purchases:

a) July 7, 2023 purchase at Rugby Homes and RV for $429.48;
b) July 10, 2023 purchase at Rough Rider RV for $1,322.73;
c) July 11, 2023 purchase at Capital RV of Minot for $682.57;
d) July 28, 2023 purchase at Rough Rider RV for $323.65;
e) July 31, 2023 purchase at Amunrud's RV in Sydney, MT for $326.85;
f) August 7, 2023 purchase at RV Upgrades for $787.54;
g) November 8, 2023 purchase at Big Rig Friendly for $884.70;
h) December 4, 2024 purchase at Big Rig Friendly for $928.88; and
i) January 2, 2024 purchase at Big Rig Friendly for $947.80.

Answer:                Between September 28, 2021 and January 9, 2024, I made several purchases from RV and RV accessory stores, including those listed below. These purchases consisted of various parts and accessories used to repair and make a fifth wheel camper trailer livable. The trailer was loaned to me for use during trips to the South to visit and assist sick family members. The items purchased included, but were not limited to, replacement parts, fixtures, utility accessories, and comfort-related components necessary to make the camper functional and suitable for extended use. The source of funds for these purchases was my personal and/or business income. I do not have a complete itemized record of each purchase. Items purchased were either installed on the camper, remain in my possession, or have since been used or disposed of in the ordinary course of use.  I am in the process of reviewing financial statements and will supplement this answer if additional itemized purchase details become available. The purchased include the following:

1.  July 7, 2023 purchase at Rugby Homes and RV for $429.48;
2.  July 10, 2023 purchase at Rough Rider RV for $1,322.73;
3.  July 11, 2023 purchase at Capital RV of Minot for $682.57;
4.  July 28, 2023 purchase at Rough Rider RV for $323.65;
5.  July 31, 2023 purchase at Amunrud's RV in Sydney, MT for $326.85;
6.  August 7, 2023 purchase at RV Upgrades for $787.54;
7.  November 8, 2023 purchase at Big Rig Friendly for $884.70;
8.  November 10, 2023 purchase at Tonys RV parts for $52.97
9.  December 4, 2023 purchase at Big Rig Friendly for $928.88;
10. December 29, 2023 Big Rig Friendly for $10.00
11. January 2, 2024 purchase at Big Rig Friendly for $947.80.
12. January 4, 2024 purchase at Big Rig Friendly for $25.00

Interrogatory 15.    Provide details about the 2020 Aero AETL trailer purchased in November 2023, including the purchase price, source of funds for the purchase, current location and owner of the trailer, and explain why this purchase was not disclosed in your bankruptcy filings.

Answer:    The 2020 Aero AETL trailer was acquired in November 2023. The estimated value at the time of acquisition was approximately $3,500.00. I am the current owner of the trailer, and it is presently located in my possession. The trailer was not included in my initial Chapter 13 bankruptcy filing because I did not take possession of it until after the original case was filed. The trailer was not purchased with cash; rather, it was transferred to me in partial satisfaction of a debt owed to me. Because I acquired the trailer post-petition and took possession of it after the Chapter 13 filing, but prior to the conversion to Chapter 7, it was later disclosed in the amended filings submitted following the conversion.

Interrogatory 16.    Identify the name, address and telephone number of the owner of the fifth wheel camper and the year, make and model of the camper that you testified to using during your trips to South Carolina, as identified during your 341 Meeting.

Answer:    I am currently in the process of gathering the requested information regarding the fifth wheel camper used during my trips to South Carolina, including the name, address, and telephone number of the owner. I will supplement this response as soon as the information becomes available.

Interrogatory 17.    Identify any agreements you had with the owner of the above-described fifth wheel camper relating to your use of the same.

Answer:    I had a verbal agreement with the owner of the fifth wheel camper that allowed me to borrow and use the camper for my personal use when I needed it. As part of that agreement, I was responsible for making certain repairs or improvements necessary for its use. There was no written contract, and no rent or lease payments were exchanged. The agreement was informal and based on mutual understanding.

### *Requests for Production*

Request 1.    Produce all documents, communications, and things identified or described in your answers to these Interrogatories.

Response.        Mr. Elliott objects to this Request on the grounds that it seeks information protected by the attorney/client privilege and the attorney work product doctrine. Subject to, and notwithstanding, the foregoing objection, responsive documents (if any), to the extent the same are in the possession, custody, and control of Mr. Elliott, and to the extent that the same are not protected by attorney/client privilege will be produced.

Request 2.        Produce all documents, communications, and things you referred to or utilized in answering these Interrogatories.

Response.        Mr. Elliott objects to this Request on the grounds that it seeks information protected by the attorney/client privilege and the attorney work product doctrine. Subject to, and notwithstanding, the foregoing objection, responsive documents (if any), to the extent the same are in the possession, custody, and control of Mr. Elliott, and to the extent that the same are not protected by attorney/client privilege will be produced.

Request 3.        Produce complete copies of your 2023 state and federal tax returns, including all schedules and attachments in support of those returns.

Response.        Mr. Elliot will produce responsive documents to the extent they are in his possession, custody, or control.

Request 4.        Produce complete copies of all of working papers for your 2020, 2021, 2022, and 2023 state and federal tax returns which you relied upon to report income and expenses for those tax returns.

Response.        Mr. Elliott does not maintain formal tax workings papers. The returns were

prepared by a third-party tax preparer. To the extent any supporting documents are in Mr. Elliott's

possession, custody, or control, such documents will be produced.


Request 5.        Produce copies of all quotes and estimates for work you performed for your

business for which you were paid for the period of June 1, 2023, to the current date.


Response.        Responsive documents, to the extent the same are in the possession,

custody, or control of Mr. Elliott, will be produced.


Request 6.        Produce all invoices for work you performed for the months of February

through April of 2024.


Response.        Responsive documents, to the extent the same are in possession, custody, or

control of Mr. Elliott, will be produced.


Request 7.        Produce all documentation evidencing the source of all deposits into your

First International Bank account ending in 3588 occurring in the month of January 2024.


Response.        Responsive documents, to the extent the same are in possession, custody, or

control of Mr. Elliott, will be produced.

Request 8.    Produce all documents relating to purchases of tools you made in 2021, including, but not limited to, receipts, invoices, and credit card statements.

Response.    Mr. Elliott does not maintain detailed receipts or invoices for tool purchases made in 2021. Responsive documents, to the extent the same are in possession, custody, or control of Mr. Elliott, will be produced.

Request 9.    Produce all documents relating to purchases of tools you made in 2022, including, but not limited to, receipts, invoices, and credit card statements.

Response.    Mr. Elliott does not maintain detailed receipts or invoices for tool purchases made in 2021. Responsive documents, to the extent the same are in possession, custody, or control of Mr. Elliott, will be produced.

Request 10.    Produce all documents relating to purchases of tools you made in 2023, including, but not limited to, receipts, invoices, and credit card statements.

Response.    Mr. Elliott does not maintain detailed receipts or invoices for tool purchases made in 2021. Responsive documents, to the extent the same are in possession, custody, or control of Mr. Elliott, will be produced.

Request 11.    Produce all documents relating to purchases you made at sporting goods stores September 28, 2021 to the present, including, but not limited to, receipts, invoices, and credit card statements. Your response should include, but not be limited to, the following purchases:

    a) June 8, 2023 purchase at Big Boy's Toys in Watford City, ND for $1,384
    b) July 12, 2023 purchase at Spartan Firearms in Minot, ND for $245;
    c) October 10, 2023 purchase at Rack Jack Stand for $174.24;
    d) October 19, 2023 purchase at Lundemo Firearms, Sydney, MT for $1,883.70;
    e) October 27, 2023 purchase at Lundemo Firearms for $1,150.87;
    f) November I, 2023 purchase at Scenic Sports, Williston, ND for $442.77;
    g) November 3, 2023 purchase at Lundemo Firearms for $425.13;
    h) December 13, 2023 purchase at Scenic Sports for $385.50;
    i) January 8, 2024 purchase at Sportsman's Warehouse, Williston, ND for $601.46; and
    j) January 9, 2024 purchase at Lundemo Firearms for $1,393.06.

Response.    Defendant does not maintain detailed receipts for the purchases listed. Responsive documents, to the extent the same are in possession, custody, or control of Mr. Elliott, will be produced.

Request 12.    Produce all documents relating to purchases you made of RV accessories from RV and RV accessory stores between September 28, 2021 and January 9, 2024, including, but not limited to, receipts, invoices, and credit card statements. Your response should specifically include, but not be limited to, the following transactions:

    a) July 7, 2023 purchase at Rugby Homes and RV for $429.48;
    b) July 10, 2023 purchase at Rough Rider RV for $1,322.73;
    c) July 11 , 2023 purchase at Capital RV of Minot for $682.57;
    d) July 28, 2023 purchase at Rough Rider RV for $323.65;
    e) July 31 , 2023 purchase at Amunrud's RV in Sydney, MT for $326.85;
    f) August 7, 2023 purchase at RV Upgrades for $787.54;
    g) November 8, 2023 purchase at Big Rig Friendly for $884.70;
    h) December 4, 2024 purchase at Big Rig Friendly for $928.88; and

i) January 2, 2024 purchase at Big Rig Friendly for $947.80.

Response.    Defendant does not maintain detailed receipts for the purchases listed. Responsive documents, to the extent the same are in possession, custody, or control of Mr. Elliott, will be produced.

Request 13.    Produce all documents relating to the purchase of the 2020 Aero AETL trailer in November 2023, including, but not limited to, the bill of sale, title, registration, and proof of payment.

Response.    Responsive documents, to the extent the same are in possession, custody and control of Mr. Elliott will be produced.

Request 14.    Produce all documents you relied upon in preparing your bankruptcy schedules and Statement of Financial Affairs in both your Chapter 13 and Chapter 7 cases.

Response.    Mr. Elliott objects to this Request on the grounds that it seeks information protected by the attorney/client privilege and the attorney work product doctrine. Specifically, to the extent Mr. Elliott relied upon correspondence with his counsel, the notes of his counsel, the drafts of his counsel, or similar material in preparing his schedules, and statement of financial affairs, the same are privileged in nature and outside the permissive scope of discoverable information.

Request 15.    Produce any documents evidencing payments made on your mortgage(s) during the pendency of your Chapter 13 bankruptcy.

Response.    Responsive documents, to the extent the same are in the possession, custody, and control of Mr. Elliott, will be produced.

Request 16.    Produce all documents relating to the $73,445.96 HUD loan obtained in February 2024, including, but not limited to, the loan application, approval documents, and records of how the loan proceeds were used.

Response.    Responsive documents, to the extent the same are in the possession, custody, and control of Mr. Elliott, will be produced.

Request 17.    Produce all documents relating to tools purchased by you from September 28, 2021 to the present, including, but not limited to, receipts, invoices, credit card statements, and any appraisals or valuations of said tools.

Response.    Responsive document, to the extent the same are in the possession, custody, and control of Mr. Elliott, will be produced. Mr. Elliott does not maintain itemized receipts, invoices, or appraisals for tools purchased during this period.

Request 18.    Produce all communications between you and any financial institutions regarding loans, mortgages, or other financial transactions from September 28, 2021 to the present.

Response.    Responsive documents, to the extent the same are in the possession, custody and control of Mr. Elliott, and to the extent the same are not protected by the attorney/client privilege, will be produced.

Request 19.    Produce all documents relating to any vehicles owned, leased, or regularly used by you from September 28, 2021 to the present, including, but not limited to, titles, registration documents, loan documents, and insurance policies.

Response.    Responsive documents, to the extent the same are in the possession, custody, and control of Mr. Elliott, will be produced.

Request 20.    Produce all documents evidencing all transfers of money or property made to your children between September 28, 2020 and the present date.

Response.    Responsive documents, to the extent the same are in the possession, custody, and control of Mr. Elliott, will be produced.

Request 21.    Produce all communications with your daughter regarding the 2004 GMC Pickup you transferred in January of 2024.

Response.    Responsive documents, to the extent the same are in the possession, custody, and control of Mr. Elliott, will be produced.

I declare under penalty of perjury the foregoing is true and correct to the best of my knowledge.

Dated: May 1, 2025,

_____

Andy Elliott

Respectfully Submitted,

Dated: May 1, 2025          By:    /s/ Maurice B. VerStandig
                                   Maurice B. VerStandig, Esq.
                                   The Dakota Bankruptcy Firm
                                   1630 1st Avenue N
                                   Suite B PMB 24
                                   Fargo, North Dakota 58102-4246
                                   Phone: (701) 394-3215
                                   mac@dakotabankruptcy.com
                                   *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of May, 2025, a copy of the foregoing was served via e-mail to gene@kdlawpartners.com and heather@kdlawpartners.com.

                                   /s/ Maurice B. VerStandig
                                   Maurice B. VerStandig

# AFFIDAVIT OF KIP M. KALER
# EXHIBIT 3

# KD LAW, PLLP

GENE W. DOELING*
KIP M. KALER*
ASA K. BURCK *
JOHN M. KRINGS JR.*
TAYLOR M. KUZNIA*
BRAD A. SINCLAIR - RETIRED
 *LICENSED IN ND AND MN

3429 INTERSTATE BLVD.
P.O. BOX 9231
FARGO, ND 58106
(701) 232-8757
FAX (701) 232-0624

May 21, 2025

mac@dakotabankruptcy.com

Maurice VerStandig
The Dakota Bankruptcy Firm
1630 1st Avenue N, Suite B Pmb 24
Fargo, ND  58102

Re:    Doeling v. Elliott, et al.
       Adv. Case No. 24-07012

Mr. VerStandig,

I am working with the trustee on the above-referenced adversary action. We have reviewed Mr. Elliott's discovery responses and believe them to be insufficient and largely nonresponsive. Through this letter, the trustee requests that Mr. Elliott supplement his discovery responses and provide a date certain by which we can expect those supplemental responses.

The following is a non-exclusive list of the responses that the trustee deems to be particularly problematic.

Interrogatory 3 requires Mr. Elliott to: "Describe in detail all transfers of money or property you made to your children from September 28, 2020, to the present date. For each transfer, state the date, amount or value, recipient, purpose of the transfer, and source of funds or property transferred."

Mr. Elliott responds: "Subject to, and without waiving, the foregoing objection, Mr. Elliott answers as follows: Between September 28, 2020, and the present, I have made occasional transfers of money and personal property to my children. These transfers were customary gifts given for birthdays, Christmas, and graduations. The source of funds for any monetary gifts was my personal bank account and income. The amounts involved were nominal, and I do not presently recall specific dates, amounts, recipients, or itemized descriptions of the property transferred."

Mr. Elliott's answer acknowledges making multiple transfers to his children, but fails to identify *any* of those transfers. During Mr. Elliott's 341 Meeting, he testified as to having made several specific transfers which are not referenced herein. I would anticipate that these transfers, at the least, would be identified in greater detail now that Mr. Elliott is specifically aware that the trustee is requesting this information.

Interrogatories Nos. 4 and 5 inquire about Mr. Elliott's use of $6,500 of cash he withdrew during the month of November, 2023. Mr. Elliott's answer is nonresponsive. Instead, Mr. Elliott merely states his purported intent in withdrawing this cash. There is no indication as to how, or even whether, the money was actually spent. These withdrawals are particularly noteworthy in that they appear to have been made outside of the ordinary course of Mr. Elliott's business, and were made very shortly before his conversion from Chapter 13 to Chapter 7.

Interrogatories Nos. 6 through 9 are intended to discover more about the Debtor's tools. During his 341 Meeting, Mr. Elliott testified that, prior to 2021, he had very few tools, most of which were "off-brand." His tax returns for 2021 and 2022 indicate that he spent in excess of $60,000 on tools in two years. This leads to the conclusion that the purchase of so many tools would have been a significant acquisition outside of the ordinary course of business for Mr. Elliott, especially at a time when Mr. Elliott is in bankruptcy. To have *no* documentation of any of these purchases is suspect. In addition, Mr. Elliott's response, consistent with his 341 testimony, is that the valuation of the tools on his tax returns was determined by his tax preparer. However, the tax returns provided by Mr. Elliott indicate that the tax returns were "Self-Prepared." These are contradictory claims.

Interrogatory No. 13 requires Mr. Elliott to identify, and provide specific details for, all purchases he made at hunting, camping or sporting stores from 9/28/2021 until January 9, 2024. Mr. Elliott's response identifies purchases going back only to June 8, 2023 and indicates that during that 6-month period, Mr. Elliott purchased approximately $13,000 worth of sporting goods. It defies belief that Mr. Elliott would not be able to identify any of the products he purchased. During that same period, Mr. Elliott was apparently in arrears on his home mortgage. Please supplement Mr. Elliott's response to include all purchases during the identified period and please identify the specific purchases made during this period.

Interrogatory No. 14 is substantially similar to Interrogatory No. 13, but requests details as to Mr. Elliott's purchases from RV and RV accessory stores during the same period. Mr. Elliott's response is similarly insufficient in that he only identifies transactions made between July 7, 2023 and January 4, 2024 without identifying any of the actual purchases.

Interrogatory No. 16 asked for simple information: the name, address and telephone number of the owner of the fifth wheel camper used by Mr. Elliott, as well as the year, make and model of the camper. None of this information was provided by Mr. Elliott. It is suspect, to say the least, that Mr. Elliott cannot recall even the name of the person that is loaning him a fifth wheel camper at no cost and with no written agreement.

Maurice VerStandig
May 21, 2025
Page 2

Interrogatory No. 17 asks for additional information about the agreement regarding the fifth wheel camper. Mr. Elliott's response is, largely, non-responsive. He does state that the agreement was verbal and did not require that Mr. Elliott pay any rent for its use. What is unstated, though, are the actual terms of the agreement. Mr. Elliott claims he is to make "certain repairs or improvements necessary for its use." What repairs were required? What was the condition of the camper when Mr. Elliott took possession of it? Was the camper returned to the owner between uses, or did Mr. Elliott retain possession of the camper during the interim periods?

Mr. Elliott's document production is similarly insufficient.

As a starting point, Mr. Elliott's responses generally indicate that, to the extent the documents are in his "possession, custody, or control" they "will be produced." This response is vague in that it is not clear whether Mr. Elliott has produced the requested documents as part of these responses or whether he merely intends to produce them at a future time. Please confirm that these documents, to the extent they have been identified and located, have been produced. If any remain unproduced, please identify a date certain by which they will be produced.

Requests Nos. 15, 16 and 18 require the production of documents relating to the Elliotts' mortgages and their dealings with their financial institutions. This includes evidence of payments made on the Elliotts' mortgage(s) during the pendency of their chapter 13 bankruptcy, as well as all documents pertaining to the HUD loan obtained in February of 2024. Mr. Elliott's response contains only a Promissory Note and Subordinate Mortgage, neither of which are signed. Mr. Elliott's Answer to Interrogatory No. 11 states that the new mortgage "was initiated by Freedom Mortgage to address the arrears on [his] mortgage loan" and that the "loss mitigation option was offered by the mortgage company as part of their in-house servicing process to cure the delinquency of the mortgage loan." I would anticipate that there would be some communications between Freedom Mortgage Corporation and the Elliotts prior to their entering into this new mortgage. If any of those communications were made in writing, those should be produced. So, too, should any notices of default leading the Elliotts to enter into the new mortgage.

Request Nos. 19 through 21 contain no responsive documents, merely an indication that they "will be produced." Please provide a date certain by which these documents will be produced.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Asa K. Burck
Attorney at Law

Maurice VerStandig
May 21, 2025
Page 3

# AFFIDAVIT OF KIP M. KALER
# EXHIBIT 4

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| In re: | ) | Bky. Case No.: 21-30420 |
| | ) | Chapter 7 |
| Andy Baron Elliott, | ) | |
| Sandra Leah Elliott, | ) | |
| | ) | |
| Debtors. | ) | |
| ———————————————— | ) | |
| | ) | **PLAINTIFF'S INTERROGATORIES** |
| Gene W. Doeling as Bankruptcy Trustee, | ) | **AND REQUEST FOR PRODUCTION** |
| | ) | **OF DOCUMENTS (SET #2)** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Andy Baron Elliott, | ) | |
| Sandra Leah Elliott, | ) | |
| | ) | |
| Defendants. | ) | Adversary No. 24-07012 |
| ———————————————— | ) | |

TO:    Defendants Andy Baron Elliott and Sandra Leah Elliott:

PLEASE TAKE NOTICE that the Plaintiff requires the Defendants, Andy Baron Elliott

and Sandra Leah Elliott, to answer the following Interrogatories pursuant to Rule 33 of the Federal

Rules of Civil Procedure under oath within 30 days after service hereof.

<u>DEFINITIONS OF TERMS EMPLOYED IN THESE INTERROGATORIES AND
REQUEST FOR PRODUCTION OF DOCUMENTS</u>

A.  A word or phrase underscored in any interrogatory or the accompanying request for
production of documents indicates that the word or phrase is a term below.

(i)      "<u>You</u>", "<u>Your</u>", or "<u>Yourself</u>", refers to the defendants, its attorneys,
accountants, employees, agents, and all persons or entities acting or
purporting to act on its behalf.

(ii)      The term "<u>identity</u>", "<u>identification</u>" and "<u>identify</u>":

(a)      When used with reference to a natural person means to state
his/her full name and last known business and residence
address, the position and business affiliation of such person
at the time in question, and the <u>identity</u> of the party or other
person on whose behalf such person acted at said time;

(b)     When used with reference to any firm, partnership, corporation or other association, or any division, department or unit thereof, means to state its full name, principal office address, all business affiliations relating to the subject to the interrogatory, and the <u>identity</u> of the party or other person on whose behalf such association acted at the time in question.

(c)     When used with reference to a document, means to state the date and author (and, if different, the signer), the addressee, type of document (e.g., letter, memorandum, chart), a summary of its contents, and the present or last known location and custodian and to attach a copy of the document to the answer to the interrogatory.  If any such document was, but is no longer, in your possession or subject to your control, state the disposition which was made of it, the reason for such disposition and the date thereof;

(d)     When used with reference to any act, event, circumstance, communication, representation, conversation, meeting, transaction, occasion or other occurrence, means to state that which occurred, the date, time, place and identity of all persons present, that which each such person said, did and/or significantly failed to say or do, the approximate duration of such occurrence, the method or methods of communication employed, the identity of all persons having knowledge of such occurrence as well as the date and means when and whereby such knowledge was first acquired.

(iii)   The term "<u>document</u>" means the original and all copies regardless of original or location of any contracts, agreements, communications, correspondence, letters, telegrams, memoranda, records, reports, books, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, forecasts, schedules, statistical statements, work papers, graphs, charts, accounts, analytical records, minutes or records of meetings or conferences, consultants' reports, appraisals, records, reports or summaries of negotiations, brochures, notes, marginal notations, bills, invoices, checks, drafts, photographs, lists, journals, advertising, magnetic tapes, computer tapes, discs, and cards, printouts and all other written, printed, stenographic, recorded, photographic matter, or sound reproductions, and all drafts and copies of all of the foregoing, however produced, or reproduced, which may be in your possession, custody, or control. In answering any interrogatory using the term "<u>document</u>" specify whether the document to which reference is made in your answer is the original or a copy.

- 2 -

(iv)    The term "<u>communicate</u>" or "<u>communication</u>" means and refers to any meeting, conversation, discussion, correspondence, message or other occurrence whereby thoughts, opinions, or data are transmitted between two or more persons.

(v)    The term "<u>person</u>" or "<u>persons</u>" includes not only natural persons but also firms, partnerships, corporations and associations as well as all divisions, departments or other units thereof.

B.  Where appropriate, the use of the singular includes the plural and the use of the plural includes the singular.

C.  These interrogatories are continuing and, to the extent that your answers may be enlarged, diminished, or otherwise modified by information acquired by you after the filing of your answers hereto, you are promptly to serve and file supplemental answers reflecting all such subsequently acquired information.

D.  If you contend that any communication of document sought by these interrogatories is subject to any privilege, state the general subject matter of communication of document, the date the information or document was transmitted or prepared, each person having knowledge of the communication or document (and, in the case of a document, its author, signer and each person to whom a copy was directed), and the nature of the privilege.

## <u>INTERROGATORIES</u>

18.    Identify all credit card accounts you have had access to or used, from January 1, 2021 to date.  This includes but is not limited to Visa credit card ********** 5867.

19.    Identify bank, credit union, crypto, and other monetary type accounts in which you have had an interest in, access to, or used, from January 2021 to present.

20.    Identify all firearms, firearm related goods, and sporting goods, you have acquired from January 1, 2021 through present.  This includes the date of acquisition, from whom (name, address and telephone number), and consideration given.  (This includes all items acquired from or through Big Boys Toys, Cabela, Scenic Sports, Silencer Shop, Sportsman Warehouse, Capital RV, and Roughrider RV, and any other similar sellers.)

21.    For all items you have identified in Interrogatory #20, identify the present location of each item and who possesses it (name, address and telephone number), or its disposition.  If the item has been disposed of (sold, transferred, gifted, leased, or other temporary or permanent loss of possession), identify all facts related to that disposition, including: to whom it was conveyed including name, address and telephone number, documents evidencing the disposition, date of disposition and consideration received and what you did with the consideration.

## REQUEST FOR PRODUCTION OF DOCUMENTS

TO:  Andy Baron Elliott and Sandra Leah Elliott

PLEASE TAKE NOTICE that Kip M. Kaler, attorney for the Plaintiff in the above proceeding requires the Defendants, Andy Baron Elliott and Sandra Leah Elliott, to produce or permit the attorney for the Plaintiff to inspect and copy all designated documents described herein pursuant to Rule 34 of the Federal Rules of Civil Procedure within 30 days after service hereof. Further, you are required to produce such documents for inspection as they are kept in the usual course of business or shall organize and label them to correspond with the categories contained in this request.  These documents should be produced at the office of KD Law, PLLP, 3429 Interstate Blvd. S., Fargo, North Dakota 58103 by 5:00 p.m. on July 29, 2025.  In lieu thereof you may provide copies of such documents within the time prescribed.

22. Produce all periodic (usually monthly) statements issued by the credit card issuers identified in your Answer to interrogatory #18.
23. Produce all periodic (usually monthly) statements issued by the bank, credit union, crypto, and other monetary type account issuers, identified in your Answer to interrogatory #19.
24. Produce all documents evidencing those transactions identified in your Answer to interrogatory #20, including all receipts, agreements, registrations, forms of payment, etc.
25.  Produce all documents evidencing the disposition of those items described in your Answer to interrogatory #21, including all receipts, agreements, registrations, forms of payment, etc.

Dated this 25th of June, 2025.

/s/ Kip M. Kaler
Kip M. Kaler (ND Atty. No. 03787)
KD LAW, PLLP
Attorneys for Plaintiff
3429 Interstate Blvd. S.
P.O. Box 9231
Fargo, ND 58106-9231
(701) 232-8757
kip@kdlawpartners.com

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bky. Case No.: 21-30420 |
| | ) | Chapter 7 |
| Andy Baron Elliott, | ) | |
| Sandra Leah Elliott, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| Gene W. Doeling as Bankruptcy Trustee, | ) | **AFFIDAVIT OF SERVICE** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Andy Baron Elliott, | ) | |
| Sandra Leah Elliott, | ) | |
| | ) | |
| Defendants. | ) | Adversary No. 24-07012 |
| _____ | ) | |

I, Janae Kragero, being first duly sworn and under oath, depose and say: I am of legal age, a citizen of the United States and not a party to the action herein; that on the 26th day of June, 2025, I served the following documents:

### PLAINTIFF'S INTERROGATORIES AND
### REQUEST FOR PRODUCTION OF DOCUMENTS (Set #2)

on the persons listed below by placing a true and correct copy of said documents in an envelope addressed as follows:

> Maurice B. VerStandig
> The Dakota Bankruptcy Firm
> 1630 1st Avenue N
> Suite B PMB 24
> Fargo, ND 58102-4246

and deposited same, with postage fully prepaid thereon, in the United States mails at Fargo, North Dakota, for delivery by the United States Post Office Department as directed on the envelope; that there is regular mail service between the place of mailing and the address as directed on the envelope.

Janae R. Kragero

Subscribed and sworn to before me this 26th day of June, 2025

NOTARY PUBLIC
Cass County, North Dakota

CHARITY GRUENEICH
Notary Public
State of North Dakota
My Commission Expires Oct. 22, 2026

# AFFIDAVIT OF KIP M. KALER
# EXHIBIT 5

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Andy Baron Elliott | ) | Case No. 21-30420 |
| | ) | (Chapter 7) |
| and | ) | |
| | ) | |
| Sandra Leah Elliott, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| Gene W. Doeling, in his Official Capacity | ) | |
| as Chapter 7 Trustee, | ) | |
| | ) | Adv. Case No. 24-07012 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Andy Baron Elliott, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSES, OBJECTIONS AND ANSWERS TO SECOND
## INTERROGATORIES AND REQUESTS FOR PRODUCTION

Comes now Andy Baron Elliott ("Mr. Elliott"), by and through undersigned counsel, pursuant to Federal Rules of Civil Procedure 33 and 34, and in response, objection, and answer to the second set of interrogatories (the "Interrogatories," and each an "Interrogatory") and requests for production (the "Requests," and each a "Request") of Gene W. Doeling in his capacity as trustee of Mr. Elliott's bankruptcy estate (the "Trustee") states as follows:

### *Interrogatories*

Interrogatory 18.    Identify all credit card accounts you have had access to or used, from January 1, 2021 to date.  This includes but is not limited to Visa credit card ********** 5867:

Objection:    Mr. Elliott objects to this Interrogatory to the extent it seeks information concerning credit card accounts used or accessed after the above-captioned case was converted to chapter 7. Such information is not relevant to the issues *sub judice* and is beyond the applicable temporal scope of inquiries reasonably calculated to lead to the discovery of admissible evidence.

Answer:    Subject to, and without waiving, the foregoing objection, and pursuant to Federal Rule of Civil Procedure 33(d), all responsive records in the possession, custody and control of Mr. Elliott have been produced.

Interrogatory 19.    Identify bank, credit union, crypto, and other monetary type accounts in which you have had an interest in, access to, or used, from January 2021 to present:

Objection:    Mr. Elliott objects to this Interrogatory to the extent it seeks information concerning financial accounts used or accessed after the above-captioned case was converted to chapter 7. Such information is not relevant to the issues *sub judice* and is beyond the applicable temporal scope of inquiries reasonably calculated to lead to the discovery of admissible evidence.

Answer:    Subject to, and without waiving, the foregoing objection, and pursuant to Federal Rule of Civil Procedure 33(d), all responsive records in the possession, custody and control of Mr. Elliott have been produced.

Interrogatory 20.    Identify all firearms, firearm related goods, and sporting goods, you have acquired from January 1, 2021 through present.  This includes the date of acquisition, from whom (name, address and telephone number), and consideration given.  (This includes all items acquired from or through Big Boys Toys, Cabela, Scenic Sports, Silencer Shop, Sportsman Warehouse, Capital RV, and Roughrider RV, and any other similar sellers.)

Docusign Envelope ID: 79D318FF-F134-43FE-A064-8361F2B5ED64

Objection:    Mr. Elliott objects to this Interrogatory to the extent it seeks information concerning purchases made after the above-captioned case was converted to chapter 7. Such information is not relevant to the issues *sub judice* and is beyond the applicable temporal scope of inquiries reasonably calculated to lead to the discovery of admissible evidence.

Answer:    Subject to, and without waiving, the foregoing objection, and pursuant to Federal Rule of Civil Procedure 33(d), all responsive records in the possession, custody and control of Mr. Elliott have been produced, *except* that records in Mr. Elliott's possession, solely because they have been obtained from the Trustee (though his use of subpoenas) have not been re-produced to the Trustee so as to avoid the production of redundant documents. To the extent the Trustee wishes to have said documents reproduced, Mr. Elliott will not object to so doing.

In further answer, Mr. Elliott notes he has procured various firearms and accessories during the relevant time period but lacks records for certain such purchases. He also observes he has traded many such items and does, too, lack extensive records for most such trades (though some records have been obtained and produced).

Additionally, Mr. Elliott observes that a trust for his benefit owns a couple of mufflers. He believes this trust was established after his case was filed, but he is not certain of such and is endeavoring to locate the trust paperwork which, if and when located, will be produced.

Mr. Elliott reasonably estimates the extant value of all firearms and accessories he owns to be not more than $7,000.00 in the aggregate.

Interrogatory 21.    For all items you have identified in Interrogatory #20, identify the present location of each item and who possesses it (name, address and telephone number), or its disposition.  If the item has been disposed of (sold, transferred, gifted, leased, or other temporary

or permanent loss of possession), identify all facts related to that disposition, including: to whom it was conveyed including name, address and telephone number, documents evidencing the disposition, date of disposition and consideration received and what you did with the consideration..

Answer.          Pursuant to Federal Rule of Civil Procedure 33(d), records of the disposition of many implicated items have been produced. Those firearms still owned by Mr. Elliott are maintained in his home.


### Requests for Production

Request 22.    Produce all periodic (usually monthly) statements issued by the credit card issuers identified in your Answer to interrogatory #18.

Response.      All responsive records in the possession, custody and control of Mr. Elliott have been produced.


Request 23.    Produce all periodic (usually monthly) statements issued by the bank, credit union, crypto, and other monetary type account issuers, identified in your Answer to interrogatory #19

Response.      All responsive records in the possession, custody and control of Mr. Elliott have been produced.


Request 24.    Produce all documents evidencing those transactions identified in your Answer to interrogatory #20, including all receipts, agreements, registrations, forms of payment, etc.

Response.     All responsive records in the possession, custody and control of Mr. Elliott have been produced.


Request 25.     Produce all documents evidencing the disposition of those items described in your Answer to interrogatory #21, including all receipts, agreements, registrations, forms of payment, etc.

Response.     All responsive records in the possession, custody and control of Mr. Elliott have been produced.


I declare under penalty of perjury that the foregoing is true and correct.

7/29/2025
_____          _____
Executed on                                              Andy Elliott


Respectfully Submitted,

Dated: July 28, 2025          By:     /s/ Maurice B. VerStandig
                                              Maurice B. VerStandig, Esq.
                                              The Dakota Bankruptcy Firm
                                              1630 1st Avenue N, Suite B PMB 24
                                              Fargo, North Dakota 58102-4246
                                              Phone: (701) 394-3215
                                              mac@dakotabankruptcy.com
                                              *Counsel for the Defendants*
                                              *Signed as to Objections Only*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of July, 2025, a copy of the foregoing was served via e-mail to gene@kdlawpartners.com and heather@kdlawpartners.com.


                                              /s/ Maurice B. VerStandig
                                              Maurice B. VerStandig

# AFFIDAVIT OF KIP M. KALER
# EXHIBIT 6

# KD LAW, PLLP

GENE W. DOELING*
KIP M. KALER*
ASA K. BURCK *
JOHN M. KRINGS JR.*
TAYLOR M. KUZNIA*
BRAD A. SINCLAIR - RETIRED
 *LICENSED IN ND AND MN

3429 INTERSTATE BLVD.
P.O. BOX 9231
FARGO, ND 58106
(701) 232-8757
FAX (701) 232-0624

August 14, 2025

mac@dakotabankruptcy.com

Maurice VerStandig
The Dakota Bankruptcy Firm
1630 1st Avenue N, Suite B
Fargo, ND  58102

Re:   Doeling v. Elliott, et al.
         Adv. Case No. 24-07012

Mr. VerStandig,

I received the defendants' responses to Interrogatories and Request Production of Documents and I want to make some things are clear, or get a better answer from the defendants.  Please provide me with complete answers to these issues within the next week.

As to Interrogatory #18, defendants did not identify the credit card accounts they used during the period requested.  The objection might be partially valid, but it depends on the information contained in the documents to be disclosed.  There is certainly a period of time after the conversion of the case that those credit card statements are still relevant – where did the debtors' get the money to pay the credit cards post-petition.  Therefore, the answer to this interrogatory is insufficient.

As to Interrogatory #19, the debtors' response is similarly deficient.  The debtors need to specifically identify such accounts – mere reference to documents produced is not a full response as to all accounts the debtors actually used or had access to.

As to Interrogatory #20, again the same deficiency.  Mere reference to documents does not affirmatively state if those are the only firearms, etc., acquired during that time.  I am looking for identification of those firearms not identified in the documents I obtained from third party sources.

As to Interrogatory #21, this has several deficiencies. This interrogatory asks not only for the disposition of the firearms but also the disposition of the consideration received. From what little I have seen, there is no description of where the money went. Considering the fact that the debtors purchased $100,000 worth of assets, converting those assets to cash and then not explaining the disposition of those sums, is entirely nonresponsive. In addition, defendants must identify the firearms, etc., they still have possession of. Obviously they should compare the list of firearms, etc. they acquired, those disposed of which have been identified as such, and the difference, and explain accordingly. I want a list of firearms still in possession of the defendants.

As to the documents produced, there have been no credit card statements produced, yet I know that a credit card has been used. The defendants need to affirmatively state that they have no such records. This applies to requests #22 and 23.

Given the evasiveness of the defendants up to this point, I intend to move ahead with their depositions and when additional documents are produced, continue with their depositions at that time. Please give me dates during the first two weeks of September when I can conduct the depositions of the defendants in North Dakota. Also, suggest to me acceptable locations, which I would expect to be either Bismarck or Fargo, considering the location of the attorneys and the venue of the court. Please provide this to me no later than midweek next week, or I will schedule it at my convenience assuming the defendants and you have no conflicts.

Sincerely,

Kip M. Kaler
Attorney at Law

Maurice VerStandig
August 14, 2025
Page 2

# AFFIDAVIT OF KIP M. KALER
# EXHIBIT 7

 

Andy Elliott
Andybelliott2

Business ⬥

# Blue Tech Diesel Technologies Inc

Corporation - Business - Domestic



**File Amendment**



**Reinstate**

| | |
|---|---|
| *Filing Type* | **Corporation - Business - Domestic** |
| *Status* | **Inactive - Involuntary** |
| *Inactive Date* | **08/15/2025** |
| *Standing - AR* | **Not Good** |
| *Standing - RA* | **Not Good** |
| *Standing - Other* | **Good** |
| *Formed In* | **NORTH DAKOTA** |
| *Term of Duration* | **Perpetual** |
| *Initial Filing Date* | **02/05/2021** |
| *Principal Address* | **1408 WEST PHEASANT RIDGE DR ANDY ELLIOTT WATFORD CITY, ND 58854** |
| *Mailing Address* | **PO BOX 10054 WILLISTON, ND 58803-0001** |
| *AR Due Date* | **08/01/2024** |
| *Registered Agent* | **ND Secretary of State (N.D.C.C. § 10-01.1-13) 600 E BOULEVARD AVE DEPT 108 BISMARCK, ND  58505-0500** |

| | Clients | Invoices | Paid |
|---|---|---|---|
| **Tax Year 2023** | 17 | 20 | $177,977.31 |
| Dec | 2 | 0 | $0.00 |
| Nov | 1 | 0 | $0.00 |
| Oct | 2 | 0 | $0.00 |
| Sep | 2 | 0 | $0.00 |
| Aug | 3 | 0 | $0.00 |
| Jul | 3 | 0 | $0.00 |
| Jun | 0 | 0 | $0.00 |
| May | 1 | 0 | $0.00 |
| Apr | 3 | 1 | $810.00 |
| Mar | 2 | 4 | $95,465.31 |
| Feb | 5 | 4 | $14,842.00 |
| Jan | 4 | 11 | $66,860.00 |

| | Clients | Invoices | Paid |
|---|---|---|---|
| **Tax Year 2022** | 12 | 8 | $77,100.00 |
| Dec | 1 | 1 | $3,600.00 |
| Nov | 2 | 2 | $12,510.00 |
| Oct | 0 | 0 | $0.00 |
| Sep | 0 | 0 | $0.00 |
| Aug | 1 | 0 | $0.00 |
| Jul | 2 | 2 | $20,800.00 |
| Jun | 2 | 1 | $11,500.00 |
| May | 1 | 1 | $27,440.00 |
| Apr | 0 | 0 | $0.00 |
| Mar | 1 | 0 | $0.00 |
| Feb | 2 | 0 | $0.00 |
| Jan | 4 | 1 | $1,250.00 |

| | Clients | Invoices | Paid |
|---|---|---|---|
| **Tax Year 2024** | 33 | 71 | $558,866.08 |
| Dec | 3 | 6 | $136,046.00 |
| Nov | 2 | 7 | $83,306.00 |
| Oct | 5 | 14 | $69,635.00 |
| Sep | 14 | 15 | $63,931.00 |
| Aug | 4 | 5 | $73,698.00 |
| Jul | 5 | 5 | $45,012.77 |
| Jun | 2 | 4 | $19,000.00 |
| May | 4 | 5 | $26,708.15 |
| Apr | 4 | 4 | $17,935.00 |
| Mar | 4 | 4 | $19,070.00 |
| Feb | 2 | 1 | $524.16 |
| Jan | 3 | 1 | $4,000.00 |

|  | Clients | Invoices | Paid |
|---|---|---|---|
| **Tax Year 2021** | 24 | 39 | $238,535.94 |
| Dec | 2 | 2 | $3,778.50 |
| Nov | 2 | 0 | $0.00 |
| Oct | 4 | 3 | $41,870.00 |
| Sep | 1 | 0 | $0.00 |
| Aug | 3 | 3 | $35,520.00 |
| Jul | 2 | 1 | $4,800.00 |
| Jun | 0 | 0 | $0.00 |
| May | 0 | 0 | $0.00 |
| Apr | 5 | 7 | $12,079.11 |
| Mar | 9 | 10 | $64,465.62 |
| Feb | 6 | 5 | $17,888.30 |
| Jan | 8 | 8 | $58,134.41 |

# AFFIDAVIT OF KIP M. KALER
# EXHIBIT 8

## 5TH WHEEL TOY HAULER TRAILER LEASE TO OWN AGREEMENT

**This Agreement** is dated as of ___12___ Day of ___SEPTEMBER___ by and between **M&J Transport LLC** and

___ANDY  B  ELLIOTT_____ ( "**Lessee**").

1. **EQUIPMENT COVERED AND TERM**

   A. **Agreement.** M&J Transport LLC agrees to lease to you and you agree to lease from M&J Transport LLC the trailer listed at the bottom of this agreement. When you sign this lease, you authorize M&J Transport LLC to obtain the trailer and you agree to take delivery.

   B. **Lease Term.** The lease term for the Trailer begins August 1, 2023. The lease term ends when the trailer is paid for in full by the Lessee, which may be paid off early by requesting a pay off quote, and making the lump sum payment in full. The current pay off quote (as of 9-11-23) is $37,476.79. The lease term is from <u>August 1, 2023 and will continue for 70 months until June 1, 2029 at an annual rate of 6.5% interest.</u>

   C. **Lease Payments:** You agree to pay to M&J Transport LLC for the trailer in the amount of $656.00 each month in advance on the first day of each month at: 12456 Woodland Lane, Watford City, ND 58854 (address for rent payment) or at any other address designated by M&J Transport LLC

   D. **Late Charges:** If any amount under this Agreement is more than __5__ days late, You agrees to pay a late fee of $50.00 per rented trailer.

   E. **Trailer Specification, Alteration, and Equipment.** You agree not to alter the structure of the Trailer without M&J TRANSPORT LLC's written consent. You agree to pay for all structural alterations, special equipment and all changes in painting, lettering, and art work that you make or request M&J Transport LLC to make after you sign this agreement. If a law or regulation changes, after you sign this agreement, that requires M&J Transport LLC to install new or additional equipment on the Trailer or to otherwise alter the Trailer, M&J Transport LLC will perform the installation or alteration at your expense.

   F. **Possession and Surrender Of Equipment:** You shall be entitled to possession of the Equipment on the first day of the Lease Term. At the expiration of the Lease Term, once the loan has been paid off completely, Lessee will be issued a title for said trailer once title has been provided to them. Until trailer balance is paid in full, Lessee acknowledges that title to the Equipment will at all times be vested in M&J TRANSPORT, and no right, title, or interest in the Equipment will pass to Lessee other than, conditioned upon Lessee's compliance with the Lease, the right to possess and use the Equipment as provided in the Lease. Lessee agrees not to sell, assign, sublet, pledge, or otherwise encumber any interest in the Lease or the Equipment and agrees to keep the same free from any lien,

Lessee's Initials: __ABE_____

1

**HOLT/M&J TRANSPORT #0041**

encumbrance, right of distraint or any other claim that may be asserted by any third party. Lessee will immediately notify M&J TRANSPORT in writing of any tax or other liens attaching to the Equipment. M&J TRANSPORT may require plates or markings to be affixed to or placed on the Equipment indicating M&J TRANSPORT's interest. M&J TRANSPORT and Lessee hereby confirm their intent that the Equipment always remain and be deemed personal property even though the Equipment may hereafter become attached or affixed to realty. Lessee will obtain all such waivers as M&J TRANSPORT may reasonably require to acknowledge M&J TRANSPORT's title to and assure M&J TRANSPORT's right to remove the Equipment, including any landlord and mortgagee waivers. In the event a court of competent jurisdiction determines that the Lease represents a conditional sale or financing arrangement, Lessee grants M&J TRANSPORT a continuing first priority security interest in the Equipment and all proceeds thereof to secure Lessee's obligations under the Lease.

2.  **DEPOSIT AND REPAIRS**

A.  **Security Deposit:** Prior to taking possession of the Equipment, you shall deposit with M&J Transport LLC, in trust, a security deposit of $_____0_____ as security for the performance by You of the terms under this Agreement and for any damages caused by You or Your agents to the Equipment during the Lease Term. M&J Transport LLC may use part or all of the security deposit to repair any damage to Equipment caused by You or your agents. However, M&J Transport LLC is not just limited to the security deposit amount and You remain liable for any balance. You shall not apply or deduct any portion of any security deposit from the last or any month's rent. You shall not use or apply any such security deposit at any time in lieu of payment of rent. If You breach any terms or conditions of this Agreement, you shall forfeit any deposit, as permitted by law.

B.  **Additional Repairs.** Regardless of any other provision of this Agreement, you agree to pay for all damage, repairs, maintenance, and related expenses resulting from your operation of the Trailer in violation of this Agreement.

3.  **TRAILER OPERATING CREDENTIALS AND TAXES**

A.  **All Other Taxes.** Unless otherwise specified in this Agreement, you agree to pay for all taxes, fees, special licenses and tolls (whether in effect now or imposed after the date of this Agreement) relating to any Trailer(s) or to the lease, rental, or other charges under this Agreement. If your failure to pay any taxes, fees or tolls results in a claim or lien involving Trailer, then M&J Transport LLC may settle the claim or lien, and you will promptly pay M&J Transport LLC the full amount of such settlement.

B.  **Encumbrances, Taxes and Other Laws:** You shall keep the Equipment free and clear of any liens or other encumbrances, and shall not permit any act where M&J Transport LLC's title or rights may be negatively affected. You shall be responsible for complying with and conforming to all laws and regulations relating to the possession, use or maintenance of the Equipment. Furthermore, you shall promptly pay all taxes, fees licenses and

2

Lessee's Initials: 

**HOLT/M&J TRANSPORT #0042**

governmental charges, together with any penalties or interest thereon, relating to the possession, use or maintenance of the Equipment.

5.    **INDEMNIFICATION**

    A.    **Indemnification for Damages and Defense Costs.** You agree to defend, release, indemnify and hold M&J TRANSPORT LLC harmless for all Damages and Defense Costs: (1) in excess of or not covered by Liability Insurance (whether provided by you or M&J TRANSPORT LLC's) arising out of or related to the ownership, maintenance, use or operation of each Trailer; (2) arising out of or related to death or injury to you, your drivers, employees, and agents caused by or related to the ownership, maintenance, use or operation of each Trailer; (3) arising out of or related to you violation of this Agreement; or (4) arising out of your failure to procure and maintain Liability Insurance.

    B.    **Insurance:** You shall be responsible to maintain insurance on the Equipment with losses payable to M&J Transport LLC against fire, theft, collision, and other such risks as are appropriate and specified by M&J Transport LLC Upon request by M&J TRANSPORT, Inc, you shall provide proof of such insurance.

6.    **PHYSICAL DAMAGE**

    A.    **Payment of Physical Damage.**  The party designated on Schedule A (the "Responsible Party") will pay for all loss, theft or damage ("Physical Damage") to any Trailer. (Lessee is Responsible)

    B.    **Trailer Loss, Theft or Destruction.**  If a Trailer is lost, stolen or in an accident, you agree to immediately notify M&J TRANSPORT LLC's and to make a report to M&J TRANSPORT LLC as soon as practicable. If a Trailer is involved in a collision or accident, M&J TRANSPORT LLC's will decide within 30 days of being notified whether that Trailer is damaged beyond economic repair. If a lost or stolen Trailer is still missing 30 days after you notify M&J TRANSPORT LLC's, or if a Trailer is damaged beyond economic repair, then the lease on that Trailer will terminate once you have paid M&J TRANSPORT LLC's all amounts owed under this Paragraph 6 and any other outstanding charges. You agree to also provide M&J TRANSPORT LLC's with copies of any reports that you have provided to your insurer or any government agency and assist M&J TRANSPORT LLC's and the insurer in the investigation, defense, or prosecution of any claims or suits. Regardless of who is the Responsible Party, you will pay for the loss of tools, tarpaulins, accessories, spare tires, or other similar equipment furnished by M&J TRANSPORT LLC.

    C.    **Insurance:** You shall be responsible to maintain insurance on the Equipment with losses payable to M&J Transport LLC against fire, theft, collision, and other such risks as are appropriate and specified by M&J Transport LLC. Upon request by M&J TRANSPORT, You shall provide proof of such insurance.

7. **CARGO LOSS OR DAMAGE.**  M&J TRANSPORT LLC's will not be liable for loss of or damage to any cargo, goods or property in, carried on, or towed by any Trailer ("Cargo"). You agree to

3

Lessee's Initials: _ABE_

**HOLT/M&J TRANSPORT #0043**

defend, release, indemnify, and hold M&J TRANSPORT LLC's harmless for all Damages and Defense Costs arising out of or related to loss or damage to Cargo.

9.    **BREACH OR DEFAULT**

**A. Breach or Default.**

*(1) Default Procedure.* If you breach this Agreement, then M&J Transport LLC may send you a notice of default. You will have 7 days from the date that M&J Transport LLC sends you the notice to cure the default. If you fail to cure a default as required by Paragraph 9A, then M&J Transport LLC may, at its option, without prejudice to M&J Transport LLC other remedies under this Agreement, at law or in equity: (i) immediately responses any or all Trailers, Substitute Trailers wherever they may be located, without further demand or notice (unless required by law in the relevant jurisdiction); and/or (ii) terminate the Agreement as to any or all of the Trailers. Repossession of the Trailers will not automatically terminate the Agreement. You shall be liable for all charges that accrue during the period that M&J Transport LLC retains the Trailers.

*(2) Default under Other Agreements.* If you breach any other agreement between you and M&J TRANSPORT, including but not limited to any rental and/or maintenance agreements, then you will be in default of this Agreement. If you breach this Agreement, you will be in default of any other agreement between you and M&J Transport LLC

*(3) Default Remedies.* Upon the occurrence of any Default, M&J TRANSPORT may exercise any one or more of the following remedies (which remedies will be cumulative, and may be exercised simultaneously, in each case to the extent permitted by Applicable Law): (i) cancel or terminate the Lease provided that these T/C's will remain in effect until such time that the Equipment is returned to M&J TRANSPORT); (ii) secure peaceable repossession and removal of the Equipment by M&J TRANSPORT or its agent without judicial process at Lessee's expense, including, without limitation, reasonable attorneys' fees; (iii) demand and Lessee will return the Equipment to M&J TRANSPORT in accordance with the standards set forth in these T/C's; (iv) lease each unit of Equipment in such manner and upon such terms as M&J TRANSPORT may in its sole discretion determine; (v) demand and Lessee will pay all reasonable expenses in connection with the Equipment relating to its retaking, returning to required condition, leasing, or the like; and (vi) exercise any other right or remedy that may be available to it under the Uniform Commercial Code or any other Applicable Law. To the extent permitted by Applicable Law, Lessee waives all rights it may have to limit or modify any of M&J TRANSPORT's rights and remedies hereunder, including, without limitation, any right of Lessee to require M&J TRANSPORT to dispose of or marshal the Equipment or otherwise mitigate its damages hereunder. c) Upon the occurrence of any Default, M&J TRANSPORT may exercise one or more of the following remedies in addition to the remedies set forth in Section 9(b) above (which remedies will be cumulative, and may be exercised simultaneously, in each case to the extent permitted

by Applicable Law): (i) by notice to Lessee, as liquidated damages for loss of a bargain and not as a penalty, declare immediately due and payable (A) all past due but unpaid Lease Payments through such applicable Payment Period, and (B) all other amounts due under the Lease (including late charges), whereupon such will become immediately due and

4

Lessee's Initials: _ABE_

**HOLT/M&J TRANSPORT #0044**

payable; (ii) declare all remaining Lease Payments for the balance of the Lease Term, such sum discounted at the Discount Rate, plus all other due but unpaid Lease Payments and all other amounts due under the Lease (including late charges), immediately due and payable in full, whereupon such will become immediately due and payable; (iii) to apply to M&J TRANSPORT's account any amounts owed by M&J TRANSPORT to or for the account of Lessee as setoff against any amounts owed by Lessee to M&J TRANSPORT; (iv) to draw down the full amount available under any LOC; and (v) exercise any other rights or remedies otherwise available to M&J TRANSPORT at law or in equity.

## 10. MISCELLANEOUS PROVISIONS

**A. Assignments of Lease.** This Agreement will be binding on both parties, and our respective successors, legal representatives, and permitted assigns. You do not have the right to sublease any Trailer, nor the right to assign this agreement or any interest hereunder.

**B. Limitation of Liability.** M&J Transport LLC's liability to you for any breach of this Agreement shall be limited to the actual value of the services that M&J Transport LLC fails to provide. Notwithstanding the foregoing, neither party shall be liable to the other for indirect, special, incidental or consequential damages including, but not limited to, lost profits or punitive damages. Lessee agrees that the monitoring services and equipment leased under the lease is leased "as is" and that lessee is satisfied that the same is suitable for lessee's purposes, and that except as may otherwise be specifically provided herein or in the lease, M&J TRANSPORT has made no representation or warranty as to any matter whatsoever. M&J TRANSPORT disclaims, and lessee hereby expressly waives as to M&J TRANSPORT, all warranties with respect to the monitoring services and equipment including, without limitation, all expressed or implied warranties of merchantability and fitness for a particular purpose, quality, capacity, or workmanship, all expressed or implied warranties against patent infringements or defects, whether hidden or apparent, and all expressed or implied warranties with respect to compliance of the monitoring services or equipment with the requirements of any applicable law, specification, or contract relative thereto. In no event will M&J TRANSPORT be liable (including, without limitation, under any theory in torts) for any loss of use, revenue, anticipated profits or special, indirect, incidental, or consequential damages arising out of or in connection with the lease or the use, performance, or maintenance of the equipment or monitoring services, even if M&J TRANSPORT had knowledge of such. To the extent permitted by applicable law, lessee waives any and all rights and remedies conferred upon a lessee by article 2a of the uniform commercial code (including, without limitation, lessee's rights, claims, and defenses under article 2a of the uniform commercial code, sections 401, 402, 508-522) and any rights now or hereafter conferred by statute or otherwise that may limit or modify M&J TRANSPORT'S rights as described in the lease. In no event will M&J TRANSPORT'S total liability to lessee exceed three (3) months of lease payments preceding the event giving rise to the claim.

**C. Savings Clause.** If a court rules that any provision of this Agreement is illegal, invalid, or unenforceable, all other provisions will remain binding, effective, and fully enforceable.

5

Lessee's Initials: 

**HOLT/M&J TRANSPORT #0045**

D. **Waiver.** Delay or failure to exercise, or partial exercise of any right under this Agreement will not operate to waive that or any other right hereunder. By failing to declare or act on a default, a party does not waive that default, a party does not waive that default.

E. **Arbitration.** The parties to this Agreement agree to arbitrate any and all disputes, claims, or controversies ("claims") they may have against each other, including their current and former agents, owners, officers, directors, or employees, which arise from this relationship. The parties understand and agree that they are waiving their right to bring such claims to court, including the right to a jury trial. The arbitrator will issue a detailed written decision and award, resolving the dispute. The arbitrator's written opinion and award shall decide all issues submitted and set forth the legal principle(s) supporting each part of the opinion.

All claims and disputes arising under or relating to this Agreement are to be settled by binding arbitration in the state of North Dakota, county of McKenzie. The arbitration shall be conducted on a confidential basis pursuant to the Commercial Arbitration Rules of the American Arbitration Association. Any decision or award as a result of any such arbitration proceeding shall be in writing and shall provide an explanation for all conclusions of law and fact and shall include the assessment of costs, expenses, and reasonable attorneys' fees. Any such arbitration shall be conducted by an arbitrator experienced in Transportation Law and shall include a written record of the arbitration hearing. An award of arbitration may be confirmed in a court of competent jurisdiction.

The decision or award of the arbitrator shall be final and binding upon the parties. The arbitrator shall have the power to award any type of legal or equitable relief that would be available in a court of competent jurisdiction including, but not limited to attorneys' fees and punitive damages when such damages and fees are available under the applicable statute and/or judicial authority. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction. The parties agree that any relief or recovery to which they are entitled arising out of the business relationship or cessation thereof shall be limited to that awarded by the arbitrator

**BOTH PARTIES WAIVE ANY RIGHT TO A TRIAL BY A JURY IN ANY LAWSUIT RELATING TO THE TRANSACTIONS CONTEMPLATED BY THIS AGGREMENT.**

F. **Content and Modification of Agreement.** Neither party will be bound by this Agreement

G. **Survivability** All of the defense, release, indemnification, and hold harmless provisions of this Agreement shall survive its termination (for any reason) or expiration.

H. **Governing Law and Jurisdiction.** This Agreement shall be subject to, constructed and interpreted under the laws of the State of North Dakota without regard to its conflicts of law's provisions. The parties agree that the exclusive venue for any action relating to this Agreement shall be in jurisdiction in McKenzie County, North Dakota.

I. **Attorneys' Fees.** If either party initiates litigation to enforce its rights under this Agreement, the prevailing party in such litigation will also be entitled to receive from the

6

Lessee's Initials: 

**HOLT/M&J TRANSPORT #0046**

other party its reasonable attorney's fees (pre-trial, trial and appellate) and costs (including those paid to a collection agency).

J. **Third Party Invoices.** If M&J Transport LLC engages a third party to perform repairs, maintenance or road services, you agree to pay the third party's charges plus a reasonable mark-up to cover M&J Transport LLC's related administrative expenses.

## 11. DEFINED TERMS

A. **Damages:** All damages, claims, suits, causes of action, penalties, fees, costs, expenses and liabilities for death or injury to persons and loss or damages to property, including, but not limited to, damage to the environment and all environmental clean-up costs.

B. **Defense Costs:** All attorney's fees, experts' fees, and court costs at trial and on appeal.

C. **T/Cs:** Terms and Conditions.

## 12. ENTIRE AGREEMENT:
This Agreement constitutes the entire agreement between the Parties and supersedes any prior understanding or representation of any kind preceding the date of this Agreement. There are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Agreement. This Agreement may be modified in writing and must be signed by both M&J Transport LLC and you.

M&J Transport LLC

By: _Melissa Holt_

Name: Melissa Holt

Title: LLC Member

Date: 9-15-23

ANDY ELLIOTT

By: _Andy Elliott_

Name: Andy Elliott

Title: _____

Date: 9/12/2023

**EQUIPMENT**: M&J Transport LLC hereby leases to own the following equipment:

2014 HEARLAND CYCLONE 4000 5TH WHEEL TOY HAULER
VIN: 5SFCG4333EE279960
NADA BASE VALUE: $88,600

Lessee's Initials: ABE

7

 # Loan amortization schedule

## Enter values

| | |
|---|---|
| Loan amount | $37,476.79 |
| Annual interest rate | 6.50% |
| Loan period in years | 5.83 |
| Number of payments per year | 12 |
| Start date of loan | 8/1/2023 |

## Loan summary

| | |
|---|---|
| Scheduled payment | $656.00 |
| Scheduled number of payments | 70 |
| Actual number of payments | 4 |
| Total interest Paid | $4,016.58 |

**Andy Elliot Toy Hauler Loan**

| Payment number | Payment date | Beginning balance | Trailer Portion of Payment | Trailer Insurance Portion of Payment | Total payment | Principal | Interest | Ending balance | Cumulative interest |
|---|---|---|---|---|---|---|---|---|---|
| | 8/1/2023 | $37,476.79 | | | $0.00 | | $203.00 | $37,476.79 | $203.00 |
| | 9/1/2023 | $37,476.79 | | | $0.00 | | $203.00 | $37,476.79 | $406.00 |
| | 10/1/2023 | $37,476.79 | | | $0.00 | | $203.00 | $37,476.79 | $609.00 |
| | 11/1/2023 | $37,476.79 | | | $0.00 | | $203.00 | $37,476.79 | $812.00 |
| | 12/1/2023 | $37,476.79 | | | $0.00 | | $203.00 | $37,476.79 | $1,015.00 |
| 1 | 1/1/2024 | $37,476.79 | $4,655.05 | $344.95 | $5,000.00 | $3,437.05 | $203.00 | $34,039.74 | $1,218.00 |
| | 2/1/2024 | $34,240.35 | | | $0.00 | | $200.61 | $34,039.74 | $1,418.61 |
| | 3/1/2024 | $34,440.96 | | | $0.00 | | $200.61 | $34,039.74 | $1,619.22 |
| 2 | 4/15/2024 | $34,641.57 | $1,793.03 | $206.97 | $2,000.00 | $1,191.20 | $200.61 | $32,848.54 | $1,819.83 |
| | 5/1/2024 | $34,842.18 | | | | | $200.61 | $33,049.15 | $2,020.44 |
| | 6/1/2024 | $35,042.79 | | | | | $200.61 | $33,249.76 | $2,221.05 |
| | 7/1/2024 | $35,243.40 | | | | | $200.61 | $33,450.37 | $2,421.66 |
| | 8/1/2024 | $35,444.01 | | | | | $200.61 | $33,650.98 | $2,622.27 |
| | 9/2/2024 | $35,644.62 | $4,655.05 | $344.95 | $5,000.00 | $3,652.00 | $200.61 | $31,992.62 | $2,822.88 |
| | OCT, NOV, DEC | $31,992.62 | | $206.97 | | | $596.85 | $32,796.44 | $3,419.73 |
| 3 | 1/22/2025 | $32,796.44 | $6,731.01 | $68.99 | $6,800.00 | $5,728.24 | $198.95 | $27,068.20 | $3,618.68 |
| | FEB | $27,068.20 | | $198.95 | | | $198.95 | $27,466.10 | $3,817.63 |
| 4 | 3/1/2025 | $27,466.10 | | $68.99 | $6,000.00 | $5,732.06 | $198.95 | $21,734.04 | $4,016.58 |

**HOLT/M&J TRANSPORT #0020**